PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE JENNIFER CHOE GROVES, JUDGE**

| | |
|---|---|
| LANXESS CORPORATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Court No. 23-00073 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

## PROPOSED ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment, and all of the pleadings and papers on file herein, and after due deliberation, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment be, and hereby is granted; and it is further

ORDERED that the responsible United States Customs and Border Protection officials shall reliquidate the entries subject to this action, classifying Plaintiff's CA 1330CA 1330 under Subheading 3815.19.00 of the Harmonized Tariff Schedule of the United States, and refunding the excess duties collection on the merchandise to the Plaintiff, with lawful interest.

_____

Jennifer Choe Groves, Judge

Dated: _____

New York, New York

**PUBLIC VERSION**
**CONFIDENTIAL INFORMATION REMOVED**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE JENNIFER CHOE GROVES, JUDGE**

| | |
|---|---|
| _____ ) | |
| LANXESS CORPORATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-00073 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a) of the Rules of the U.S. Court of International Trade, Plaintiff LANXESS hereby moves this court for summary judgment. As set forth in the accompanying Memorandum in Support, there are no material facts in genuine dispute and as a matter of law that AXION CA 1330 is classified as a supported catalyst under item 3815.19.00, HTSUS, as "Reaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included: Supported catalysts: Other", subject to a general duty-free rate.

WHEREFORE, plaintiff requests that this court enter an order: (1) granting Plaintiff's motion for summary judgment: (2) classifying the subject AXION CA 1330 under HTSUS subheading 3815.19.00, and (3) revoking Ruling NY N128896 (November 10, 2010), and (4) awarding plaintiff attorney's fees, costs, and other relief as the court deems appropriate.

**PUBLIC VERSION**
**CONFIDENTIAL INFORMATION REMOVED**

Respectfully submitted,

/*s/Kenneth G. Weigel*
Kenneth G. Weigel
Brian Frey
Lian Yang
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Brian.Frey@alston.com
*Counsel to LANXESS*

Dated: August 1, 2025 Washington, D.C.

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JENNIFER CHOE GROVES, JUDGE

| | |
|---|---|
| LANXESS CORPORATION )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant. ) | Court No. 23-00073 |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Kenneth G. Weigel
Brian Frey
Lian Yang
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Brian.Frey@alston.com
*Counsel to LANXESS*

Dated: August 1, 2025

**PUBLIC VERSION**
**CONFIDENTIAL INFORMATION REMOVED**

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   Merchandise at Issue ..................................................................................... 1

III.  Tariff Provisions at Issue .............................................................................. 1

IV.   Question Presented: ....................................................................................... 2

V.    Background ..................................................................................................... 2

VI.   DISCUSSION ................................................................................................. 4

   A.  Standard for Summary Judgement ........................................................... 4

   B.  Jurisdiction ............................................................................................... 5

   C.  The Court's Role in Classification Disputes ............................................ 5

   D.  The Government's Classification is Clearly Incorrect as CA 1330 is Not Described by Heading 3208, HTSUS ............................................................................ 8

   E.  CA 1330 is Described by HTSUS Heading 3815 ..................................... 9

   F.  CA 1330 is Classified as a Supported Catalyst ....................................... 12

VII.  CONCLUSION ............................................................................................... 16

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

## TABLE OF AUTHORITIES

Page(s)

CASES

*Baxter Healthcare Corp. of P.R. v. United States*,
    182 F.3d 1333 (Fed. Cir. 1999)................................................................5, 7, 13

*Bousa, Inc. v. United States*,
    25 CIT 386 (Ct. Int'l Trade 2001) .........................................................6

*Carl Zeiss, Inc. v. United States*,
    195 F.3d 1375 (Fed. Cir. 1999)...............................................................7

*Deckers Outdoor Corp. v. United States*,
    714 F.3d 1363 (Fed. Cir. 2013)...............................................................6

*Degussa Corp. v. United States*,
    508 F.3d 1044 (Fed. Cir. 2007)...............................................................7

*GoPro, Inc. v. United States*,
    673 F. Supp. 3D 1349 (Ct. Int'l Trade 2023).............................................9

*GRK Canada, Ltd. v. United States*,
    761 F.3d 1354 (Fed. Cir. 2014)...............................................................10

*Hyaxiom, Inc. v. United States*,
    726 F. Supp. 3d 1398 (Ct. Int'l Trade 2024) ........................................6, 15

*Jarvis Clark Co. v. United States*,
    733 F.2d 873 (Fed. Cir. 1984)................................................................7

*Kalle USA, Inc. v. United States*,
    923 F.3d 991 (Fed. Cir. 2019)................................................................6

*Kanematsu USA Inc. v. United States*,
    122 F. Supp. 2d 1373 (Ct. Int'l Trade 2000) ...........................................4

*Keystone Automotive Operations v. United States*,
    732 F.Supp.3d 1339 (Ct Int'l Trade 2024.) ............................................11

*La Crosse Tech., Ltd. v. United States*,
    723 F.3d 1353 (Fed. Cir. 2013)...............................................................7

*Motorola, Inc. v. United States*,
    436 F.3d 1357 (Fed. Cir. 2006)...............................................................7

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

*N. Am. Processing Co. v. United States*,
    236 F.3d 695 (Fed. Cir. 2001) ................................................................................5

*Nidec Corp. v. United States*,
    861 F. Supp. 136 (Ct. Int'l Trade 1994) ...........................................................14

*Orlando Food Corp. v. United States*,
    140 F.3d 1437 (Fed. Cir. 1998) ............................................................................6

*Park B. Smith, Ltd. v. United States*,
    347 F.3d 922 (Fed. Cir. 2003) ..............................................................................6

*Phone Mate, Inc. v. United States*,
    690 F. Supp. 1048 (Ct. Int'l Trade 1988) ..........................................................4

*Pomeroy Collection, Ltd. v. United States*,
    559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) .............................................13, 15

*Rollerblade, Inc. v. United States*,
    112 F.3d 481 (Fed Cir. 1997) ................................................................................6

*Rubie's Costume Co. v. United States*,
    337 F.3d 1350 (Fed. Cir. 2003) ............................................................................6

*RWK Klerks Inc. v. United States*,
    94 F.4th 1374 (Fed. Cir. 2024) ..........................................................................11

*Sharp Microelectronics Technology, Inc. v. United States*,
    932 F. Supp. 1499 (Ct. Int'l Trade 1996) ........................................................14

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ................................................................................................5

**RULES**

Rule 56.1 ................................................................................................................1

**STATUTES**

19 U.S.C. § 1202 ....................................................................................................6

28 U.S.C. § 1581(a) ............................................................................................3, 5

28 U.S.C. § 2639(a)(1) ..........................................................................................6

28 U.S.C. § 2640(a) ................................................................................................5

Heading 3208……………………………………………………….…………….………...*passim*

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

Heading 3815…………………………………………………………….………………*passim*

OTHER AUTHORITIES

19 CFR § 177.12 .............................................................................................................3

*Initiator*, UCLA DEP'T CHEMISTRY & BIOCHEMISTRY,
    https://www.chem.ucla.edu/~harding/IGOC/I/initiator.html (last visited July 29,
    2025) ........................................................................................................................10

*Initiators*, ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/science/initiator-
    polymerization (last visited July 29, 2025)..............................................................10

N. M. RICE, H.M.N.H IRVING & M.A. LEONARD,
    *Nomenclature for liquid-liquid distribution (solvent extraction) (IUPAC
    Recommendations 1993)* 65 PURE & APPLIED CHEM 2374, 2380 (1993)……………....……10

World Customs Organization, Harmonized Commodity Description and Coding System:
    Explanatory Note 38.15…………………………………………………………….…11

RULINGS

HQ 329428 (January 19, 2023) .......................................................................................3

HQ 554581 (July 2, 1987) .............................................................................................14

HQ 083957 (Jul. 11. 1989) ...........................................................................................14

HQ 555610 (Feb. 1, 1991) ............................................................................................15

HQ 952077 (Feb. 23, 1993) ..........................................................................................15

HQ 953265 (May 14, 1993) ..........................................................................................15

NY N128896 (November 10, 2010) ........................................................................3, 8, 16

NY N300749 (Oct. 18, 2018) ...................................................................................13, 14

## I.      INTRODUCTION

LANXESS Corp ("LANXESS").[1] by and through its attorneys, submits this memorandum in support of its Rule 56.1 Motion for Summary Judgement.  This case concerns the classification of a product known as AXION CA 1330 ("CA 1330"). CA 1330 is a trade name for a product also known as methylaluminoxane or MAO.  MAO is used exclusively as the principal and essential component of a supported catalyst system and is bought and sold as a supported catalyst. Accordingly, LANXESS submits CA 1330 should be classified as a supported catalyst under item 3815.19, HTSUS.

## II.      Merchandise at Issue

CA 1330 is an organometallic product made from MAO and trimethylaluminum in a toluene solvent. Att. 3, Krause Decl. Specifically, CA 1330 consists of between 30 to 50% methylaluminoxane (CAS-No 206451-54-9; 2931.90.90.52 HTSUS), and between 1 to 5% trimethylaluminum (CAS- No 75-24-1; 2931.90.60.00 HTSUS) in a solution of between 50-70% toluene (CAS-No 108-88-3) *See* Att. 1, Statement of Material Facts at ¶ 7. The exact chemical content is proprietary but within these ranges.  *Id.* CA 1330 is sold and used exclusively as a supported catalyst in olefin polymerization. *Id.* at ¶ 37–38. LANXESS produces CA 1330 to specific customer requirements as set forth in contracts and certificates of analysis. Att. 4, Axion CA 1330 Contract; Att. 5, Axion CA 1330 Certificate of Analysis.

## III.      Tariff Provisions at Issue

LANXESS submits that there are two tariff provisions at issue in this case:

---

[1] LANXESS Corp (111 RIDC Drive West, Pittsburgh, PA 1527) is the current importer, which imported the protested entries dated since October 3, 2020. Subsequent to these entries, LANXESS Solutions US Inc. (formerly Chemtura Corp. which was acquired by LANXESS AG in 2017) was merged into LANXESS. LANXESS filed protests citing the IOR for the importer that filed the entry (LANXESS's importer number is 26-008195000 and LANXESS Solutions importer number was 52-218315300).

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

3208.90.00, HTSUS



3815.19.00, HTSUS:



## IV.     Question Presented:

The issue before the Court is whether CA 1330 is properly classified under item 3208.90.00, HTSUS, or under item 3815.19.00, HTSUS.

## V.     Background

LANXESS and LANXESS Solutions imported CA 1330 under item 3208.90.00, HTSUS. On November 17, 2021, LANXESS filed two protests claiming that CA 1330 is classified as a supported catalyst under item 3815.19.00, HTSUS, which provides for "*Reaction initiators,*

*reaction accelerators and catalytic preparations, not elsewhere specified or included: Supported catalysts: Other*" subject to a general duty-free rate.[2]

On October 4, 2022, CBP denied these protests citing New York Ruling Letter (NY) N128896 (November 10, 2010), issued to Chemtura Corporation, which classified "Eurecen AL 5100-10 Methylaluminoxane in Toluene and Eurecen AL 5100/30 Methylaluminoxane in Toluene" in item 3208.90.0000, HTSUS. The protest denial merely stated: "Prior Ruling - Ruling N128896 (Chemtura Corporation - 11/10/2010) places Methylaluminoxane and Toluene in 3208.90.0000 as entered." CBP also denied further review. On October 28, 2022, LANXESS filed a request to set aside the denial of the application for further review ("AFR") and to void denial of the protests. Ultimately, the CEE forwarded the protest to CBP HQ for further review. However, as the CEE took more than 60 days to forward the request to set aside the AFR denial to CBP HQ, CBP HQ determined that the application to set aside denial of the AFR was deemed denied. See HQ329428 (January 19, 2023).[3]

On March 31, 2023, LANXESS filed a summons pursuant to 28 U.S.C. § 1581(a) to contest the denial of the two protests filed on November 17, 2021, concerning the classification of CA 1330. On May 1, 2023, LANXESS proposed to stipulate with DOJ that CA 1330 is properly classified under item 3815.19.0000, HTSUS, and that CBP should reliquidate the entries accordingly, but ultimately was told that the existing ruling prevented stipulation. On October 20, 2023, CBP filed its answer in which it did not address the classification in depth, requested to dismiss the action, overruling plaintiff's claim, sustaining CBP's decision.[4]

---

[2] *See Generally* ECF No. 7.

[3] *See* ECF No. 7 at 72-74.

[4] See ECF No. 14

## VI.    DISCUSSION

Classification under item 3208.90.00, HTSUS is clearly incorrect based on the plain language of the tariff provision.  As stated above, CA 1330 consists of between 30 to 50% MAO (CAS-No 206451-54-9; 2931.90.90.52), and between 1 to 5% of trimethylaluminum (CAS-75-24-1; 2931.90.60.00 HTSUS), in a solution of over 50% toluene (CAS-No 108-88-3, 2707.20, or 2902.30, HTSUS)[5].  Item 3208.90.00, HTSUS provides for paint and varnish, which CA 1330 is not; it also provides for a solution defined in note 4 to Chapter 32 ("solutions (other than collodions) consisting of any of the products specified in headings 3901 to 3913 in volatile organic solvents").  3208.90.00, HTSUS; Att. 1, Statement of Material Facts at ¶ 42. CA 1330 does not consist of any of the products specified in headings 3901 to 3913, so it is not described by item 3208.9000, HTSUS.

CA 1330 is exclusively bought, sold and used as a component of a supported catalyst. CA 1330 as imported is the essential character of a supported catalyst system created by the polyolefin producer. *Id* at ¶ 37–38. Accordingly, CA 1330 is properly classified under item 3815.19.00, HTSUS.

### A.    Standard for Summary Judgement

Summary judgment is appropriate when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Kanematsu USA Inc. v. United States*, 122 F. Supp. 2d 1373, 1374 (Ct. Int'l Trade 2000). On a motion for summary judgment, the Court may not resolve or try factual issues. *Phone Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988). LANXESS submits that the facts relevant to the classification

---

[5] Toluene is classified based on its residual benzene content – subheading 2707.20, HTSUS, if higher than 50% (Subheading Note 3) or subheading 2902.30, HTSUS, if less than 50%.

of CA 1330 are both straightforward and not in dispute.  The product literature and declaration in Attachment 3, as well as the deposition of Michael Krause provide ample factual basis on which this Court may decide this matter. *See Generally* Att. 2, Dep. M. Krause; Att. 3, Krause Decl.

Summary Judgement is particularly appropriate in classification matters because construing the meaning and scope of a tariff provision is a question of law. *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999) Determining whether a goods fall within that meaning and scope is a question of fact. *N. Am. Processing Co. v. United States*, 236 F.3d 695, 697 (Fed. Cir. 2001).

Actions to contest the denial of a protest are adjudicated *de novo*. *See* 28 U.S.C. § 2640(a) (directing the Court of International Trade to "make its determinations upon the basis of the record made before the court"); *See also United States v. Mead Corp.*, 533 U.S. 218, 233 n.16 (2001) ("[T]he CIT 'may consider any new ground' even if not raised below, §2638, and 'shall make its determinations upon the basis of the record made before the court', rather than that developed by Customs . . . .")

Here, because there are no material facts in dispute, and the tariff provisions at issue are precise and unambiguous as to their scope.

### B.    Jurisdiction

This Court has jurisdiction over this case under 28 U.S.C. § 1581(a).

### C.    The Court's Role in Classification Disputes

Classification disputes involve questions of both fact and law.  The meaning and scope of a tariff provision is a question of law.  *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999).  Determining whether a good falls within that meaning and scope is a question of fact.  *N. Am. Processing Co. v. United States*, 236 F.3d 695, 697 (Fed. Cir. 2001).

Although 28 U.S.C. § 2639(a)(1) extends a presumption of correctness to Customs' classification decisions, this presumption "is irrelevant where there is no factual dispute between the parties." *Busa, Inc. v. United States*, 25 CIT 386, 387 (Ct. Int'l Trade 2001) (quoting *Rollerblade, Inc. v. United States*, 112 F.3d 481, 484 (Fed Cir. 1997)). CBP's decisions are not controlling upon the Court, and "the Court has an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." *Kalle USA, Inc. v. United States,* 923 F.3d 991, 995 (Fed. Cir. 2019), (internal quotation marks and citations omitted); *See also Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1355–56 (Fed. Cir. 2003).

Tariff classification under the Harmonized Tariff Schedule of the United States ("HTSUS") is governed by the General Rules of Interpretation ("GRIs"), and, if applicable, the Additional U.S. Rules of Interpretation, both of which are part of the legal text of the HTSUS. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1366 (Fed. Cir. 2013). The GRIs are applied in numerical order, with GRI 1 providing that "classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes." *See* GRI 1, HTSUS. Under GRI 1, "the HTSUS headings, as well as relative section or chapter notes, govern the classification of a product." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). Section and chapter notes "are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202." *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003).  GRIs 2 through 5 apply, "provided such headings or notes do not otherwise require." *Hyaxiom, Inc. v. United States*, 726 F. Supp. 3d 1398, 1402 (Ct. Int'l Trade 2024) (internal quotation marks omitted). After determining the correct heading, a court determines the correct subheading according to GRI 6, which requires that GRIs 1 to 5 be reapplied at the subheading level. GRI 6, HTSUS; *See also Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998).

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

"Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings." *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (quoting *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)). When interpreting the HTSUS, the court "may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Carl Zeiss*, 195 F.3d at 1379 (citing *Baxter Healthcare Corp. of P.R*, 182 F.3d at 1337).

The court may also consult the Explanatory Notes ("ENs") for the HTSUS. *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (citing *Motorola, Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006)); Although not legally binding, the ENs "are generally indicative of the proper interpretation of a tariff provision." *Id*. HTSUS provisions are based on the Harmonized System rules and nomenclature (pursuant to the Harmonized System Convention) with respect to the GRIs, the section and chapter notes, and the headings and subheadings to the six-digit level. Therefore, the ENs are informative as to the intent of the drafters of the Harmonized System where, as here, the dispute involves a legal determination of the scope of the competing headings as determined under the GRIs and the section and chapter notes.

In cases involving a tariff classification dispute, the court first considers whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). Plaintiff has the burden of showing that the government's determined classification is incorrect. *Id*. at 878. If plaintiff meets that burden, the court has an independent duty to arrive at "the *correct* result, by whatever procedure is best suited to the case at hand." *Id* (emphasis in original).

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

**D.      The Government's Classification is Clearly Incorrect as CA 1330 is Not**

**Described by Heading 3208, HTSUS**

The government's classification is incorrect because CA 1330 is not a "paint," "varnish," or solution found under Headings 3901 to 3913. The language of Heading 3208, HTSUS, is both clear and precise.  Applying GRI 1, the language of item 3208.90.0000, HTSUS, provides for two different items –

1.  "*Paints and varnishes…;*

2.  *solutions as defined in note 4 to this chapter*: *other.*"

CA 1330 is not a paint or varnish. Att. 1, Statement of Facts ¶ 42; Att. 3, Krause Decl. at ¶ 55.  In NY N128896, Customs must have found the Chemtura product to be a "solution defined in Note 4" to Chapter 32. Note 4 to Chapter 32 reads -- "*solutions (other than collodions) consisting of any of the products specified in headings 3901 to 3913 in volatile organic solvents when the weight of the solvent exceeds 50 percent of the weight of the solution*."  The products specified in these headings are as follows:

*3901: Polymers of ethylene, in primary forms*
*3902: Polymers of propylene or of other olefins, in primary forms*
*3903: Polymers of styrene, in primary forms:*
*3904: Polymers of vinyl chloride or of other halogenated olefins, in primary forms*
*3905: Polymers of vinyl acetate or or of other vinyl esters, in primary forms; other vinyl polymers in primary forms*
*3906: Acrylic polymers in primary forms:*
*3907: Polyacetals, other polyethers and epoxide resins, in primary forms; polycarbonates, alkyd resins, polyallyl esters and other polyesters, in primary forms*
*3908: Polyamides in primary forms*
*3909: Amino-resins, phenolic resins and polyurethanes, in primary forms*
*3910: Silicones in primary forms*
*3911: Petroleum resins, coumarone-indene resins, polyterpenes, polysulfides, polysulfones and other products specified in note 3 to this chapter, not elsewhere specified or included, in primary forms*
*3912: Cellulose and its chemical derivatives, not elsewhere specified or included, in primary forms*

*3913: Natural polymers (for example, alginic acid) and modified natural polymers (for example, hardened proteins, chemical derivatives of natural rubber), not elsewhere specified or included, in primary forms*

CA 1330 is a mixture of MAO and of trimethylaluminum in a toluene solvent. Neither of these compounds is classified under headings 3901-3913, HTSUS. Instead, MAO is classified under item 2931.90.90.52 , HTSUS, (Other organo-inorganic compounds: Other: Aromatic: Other) and trimethylaluminum under item 2931.90.60.00, HTSUS. Toluene is the solvent, so its classification is not relevant.[6]

Although CA 1330 is a solution of two chemicals in toluene, which is a volatile organic solvent, the two chemicals—MAO and trimethylaluminum—are not even potentially classified in headings 3901-3913, HTSUS. CA 1330 cannot be classified in heading 3208, HTSUS. The Court should give no weight to Customs' previous determination because it is clearly incorrect.

### E.    CA 1330 is Described by HTSUS Heading 3815

LANXESS submits that CA 1330 should be classified as a supported catalyst under item 3815.19.00, HTSUS. Customers exclusively use CA 1330 as a component of a supported catalyst. Those in the industry refer to CA 1330 as a supported catalyst. Although CA 1330 cannot fulfill its purpose of accelerating reactions in its imported state, under GRI 2(a), CA 1330 provides the essential character of a supported catalyst system.

Subheading 3815.19, HTSUS, provides for "*Reaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included: Supported catalysts: Other.*" These terms are not defined in the HTSUS or any section or chapter notes. Accordingly, they are to be defined using their commercial or common meaning. *GoPro, Inc. v. United States*, 673 F. Supp.

---

[6] Toluene is classified based on its residual benzene content – subheading 2707.20, HTSUS, if higher than 50% (Subheading Note 3) or subheading 2902.30, HTSUS, if less than 50%. Even if Customs argues that Toluene is relevant to the classification, CA 1330 would still not be properly classified under 3208.90.0000 because Toluene is not a solution under Headings 3901– 3913.

3D 1349, 1365 (Ct. Int'l Trade 2023) (citing *GRK Canada, Ltd. v. United States*, 761 F.3d 1354, 1357 (Fed. Cir. 2014)).

LANXESS submits that he terms in 3815.90.0000, HTSUS, are defined as follows:.

Reaction initiators are defined as articles that start a reaction.  *See* Initiators, ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/science/initiator-polymerization (last visited July 29, 2025); *Initiator*, UCLA DEP'T CHEMISTRY & BIOCHEMISTRY, https://www.chem.ucla.edu/~harding/IGOC/I/initiator.html (last visited July 29, 2025); Att. 2, Dep. M. Krause at 90:12–24. A reaction initiator acts like the first domino being hit and then knocking down the others.  *See generally id.*

Reaction accelerators are articles that accelerate a reaction. *See* N. M. RICE, H.M.N.H IRVING & M.A. LEONARD, *Nomenclature for liquid-liquid distribution (solvent extraction) (IUPAC Recommendations 1993)* 65 PURE & APPLIED CHEM 2374, 2380 (1993). A catalyst is a reaction accelerator. *Id.* Catalyst, catalyst preparation, and catalyst system are all terms that describe articles that accelerate a reaction. Att. 1, Statement of Facts at ¶¶20–21; Att. 2, Dep. M. Krause at 27:22–28:19; Att. 3, Krause Decl. at ¶¶15–16; N. M. RICE, H.M.N.H IRVING & M.A. LEONARD, *Nomenclature for liquid-liquid distribution (solvent extraction) (IUPAC Recommendations 1993)* 65 PURE & APPLIED CHEM 2374, 2380 (1993).

The EN for heading 3815 states that heading 3815 specifically covers preparations that initiate or accelerate certain chemical processes,[7] Heading 3815 subdivides these products into

---

[7]  This heading covers preparations which initiate or accelerate certain chemical processes. Products which retard these processes are not included. These preparations fall broadly into two groups:

    (a)  Those of the first group are, in general, composed either of one or more active substances deposited on a support (known as "supported catalysts") or of mixtures with a basis of active substances. In the majority of cases, these active substances are certain metals, metallic oxides, other metallic compounds or mixtures thereof. The metals most frequently used as such or as compounds are cobalt, nickel, palladium, platinum, molybdenum, chromium, copper or zinc. The support, sometimes activated, generally consists of alumina, carbon, silica gel, siliceous fossil meal or ceramic materials. Examples of "supported catalysts" are supported Ziegler or Ziegler-Natta types.

two groups: Supported Catalysts and Other. The ENs state that supported catalysts "are, in general, composed either of one or more active substances deposited on a support (known as 'supported catalysts') or of mixtures with a basis of active substances." World Customs Organization, Harmonized Commodity Description and Coding System: Explanatory Note 38.15. The ENs further explain that "[i]n the majority of cases, these active substances are certain metals, metallic oxides, other metallic compounds or mixtures thereof" and that "[the] support . . . generally consists of . . . silica gel . . . ." *Id.* The ENs further explain that "[e]xamples of 'supported catalysts' are supported Ziegler or Ziegler-Natta types." *Id.*

Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *RWK Klerks Inc. v. United States*, 94 F.4th 1374, 1378 (Fed. Cir. 2024) (internal quotation marks omitted). Heading 3815 describes articles based on their use and commercial designation -- "reaction initiators", "reaction accelerators" and "catalytic preparations" and these are classified in this provision as long as they are "not elsewhere specified or included." *See Keystone Automotive Operations v. United States*, 732 F.Supp.3d 1339, 1348–49 (Ct Int'l Trade 2024.)[8]

---

(b) Those of the second group are mixtures with a basis of compounds whose nature and proportions vary according to the chemical reaction to be catalysed. These preparations include :
    (i) "free radical catalysts" (e.g., organic solutions of organic peroxides or of azo compounds, redox mixtures);
    (ii) "ionic catalysts" (e.g., alkyllithium);
    (iii) "catalysts for polycondensation reactions" (e.g., mixtures of calcium acetate with antimony trioxide).
The preparations of the second group are generally used in the course of manufacture of polymers.
World Customs Organization, Harmonized Commodity Description and Coding System: Explanatory Note 38.15.

[8] The court has not ruled whether HTSUS Heading 3815 is a use or *eo nomine* provision, nor does the court have to reach a decision in this matter to find in favor of LANXESS. Axion CA 1330 should fall under 3815.19.0000 because (1) its use as an essential component of supported catalyst to accelerate reactions and (2) the relevant industries refer to Axion CA 1330 as a component of a supported catalyst.

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

In his Declaration, Dr. Michael Krause, LANXESS's 30(b)(6) designee, explains that CA1330 is known as and used exclusively as a component in a supported catalyst in olefin polymerization. Att. 3, Krause Decl. at ¶¶33–35; *See also* Att. 2, Dep. M. Krause at 26:4–18. And that there is no other use for CA 1330. Att. 3, Krause Decl. at ¶¶38–39. The industries that produce and use CA 1330 including LANXESS's competitors, sell products like CA 1330 as supported catalysts. *Id.* at ¶53. Furthermore, CA 1330 is not elsewhere specified or included. As CA 1330 functions exclusively as the predominant active component of a catalyst system to accelerate production of polyolefin polymers, it is clearly described by Heading 3815, HTSUS. Att. 1, Statement of Facts ¶ 37; *See* Att. 3, Krause Decl. at ¶ 38. As discussed below, this classification applies even though LANXESS customers must perform additional processing on CA 1330 post importation.

**F.      CA 1330 is Classified as a Supported Catalyst**

Having found that CA 1330 is a "reaction accelerator", the Court must also determine where in Heading 3815 CA 1330 falls. LANXESS submits that by virtue of GRI 2(a), CA 1330 is classified as a supported catalyst under subheading 3815.19, HTSUS.

Although as imported, CA 1330 does not yet have the support, this is because it is the U.S. polyolefin producer who uses CA 1330 to make the catalytic preparation or catalyst system. Att. 1, Statement of Material Facts at ¶¶ 28–30. Specifically, the US polyolefin producer adds a small amount of a metallocene of its choosing and the silica gel support to the CA 1330 and then removes the toluene. The polyolefin producer then introduces this catalyst system into the reactor with the ethylene.

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

GRI 2(a) instructs that a tariff provision applies to articles that are incomplete or unfinished upon importation. [9]  Specifically, GRI 2(a) states:

> *Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.*

As CA 1330 has the essential character of a supported catalyst, GRI 2(a) directs classification under item 3815.19, HTSUS.  In this regard, whether an article has the "essential character" of the completed article under GRI 2(a) may be determined by a variety of factors, depending on the nature of the merchandise at issue. *See* NY N300749 (Oct. 18, 2018) (classifying an incomplete elevator from China). "Under GRI 2(a), the factor or factors which determine essential character will vary with the merchandise." *Id.* "It may, for example, be determined by . . . the role of a component or components in relation to the use of the good." *Id.*

The court has noted that "there is relatively little caselaw concerning the concept of 'essential character' for purposes of GRI 2(a)." *Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1387 n. 14 (Ct. Int'l Trade 2008). Of that limited case law, the Court has used different analyses when determining whether under GRI 2(a) an incomplete article has the essential character of the finished good. CA 1330 provides the essential character to an MAO/metallocene catalyst system based on a number of factors.

Dr. Krause explains that CA 1330 is the predominant active ingredient in creating the catalyst system and provides the essential character of the supported catalyst system. Att. 3, Krause Decl. at ¶ 38; Att. 2, Dep. M. Krause at 48:4–10.  In *Baxter Healthcare Corp of P.R. v. United*

---

[9] GRI 6 requires that GRIs 1 through 5 to be reapplied at the subheading level.

*States* the court applied a "fixed and certain" test to determine essential character. *Baxter Healthcare Corp. of P.R.*, 182 F.3d at 1145. Under this test, as CA 1330 has a fixed and certain use as the necessary and predominant active component of a supported catalyst system, it has the essential character of a supported catalyst system.

The fact that as imported CA 1330 does not have the ability to function as a supported catalyst as imported does not prevent it from having the essential character of a supported catalyst system. In *Sharp Microelectronics Technology, Inc. v. United States*, the Court declined to limit the application of GRI 2(a) to only those articles that have the "ability" to function as their completed counterparts. *Sharp Microelectronics Technology, Inc. v. United States*, 932 F. Supp. 1499, 1504-05 (Ct. Int'l Trade 1996), Indeed, the Court expressly recognized that "'an article need not have stand-alone capability to be classified under an *eo nomine* provision that describes it.'" *Id* (quoting *Nidec Corp. v. United States*, 861 F. Supp. 136, 141 (Ct. Int'l Trade 1994)).

Similarly, Customs and Border Protection ("CBP") has ruled that as the elevator components were "critical sub-assemblies" needed to perform the function, the elevator components had the essential character of a complete elevator. *See*, NY N300749 (Oct. 18, 2018). Over the years, CBP has applied GRI 2(a) to data processing machines. CBP found that a motherboard is a data processing machine although as imported it could not function. HQ 554581 (July 2, 1987). In HQ 083957, in contrast, CBP found that visual and display components did not have the essential character of a data processing machine because they did not have data processing functionality. CA 1330, unlike these display components, is the active component of the catalyst system that is essential to the catalyzation function. HQ 083957 (Jul. 11. 1989).

In this regard, CA 1330 is not only referred to as a supported catalyst, its only use is as the main component of the supported catalyst system in terms of value and is also critical to a

14

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

functioning catalyst system. Specifically, CA 1330 and a very small amount of a metallocene selected by the polyolefin producer are combined by the polyolefin producer with the support, silica gel, for olefin polymerization Att. 1, Statement of Material Facts at ¶ 29. The ratios used for olefin polymerization are about 70% by weight silica gel (the inert support), 29.55% CA 1330, and under 1% metallocene. *Id*. at ¶ 31. The CA 1330 plays multiple roles in the catalyst system and without it there would be no catalyst. In other words, CA 1330 is the critical component necessary to the function of the complete article – catalyzation of the chemical reaction.

The fact that CA 1330 must undergo post importation processing does not preclude the application of GRI 2(a). The courts have found that post importation processing does not bar an unfished article from classification as the finished article. See *Hyaxiom, Inc.*, 726 F. Supp. 3d at 1411 (Ct. Int'l Trade 2024). This is especially true when, as here, the processing must occur after importation by the user of the imported article. *Pomeroy Collection, Ltd.* 559 F. Supp. 2d at 1387–88.

Other CBP rulings have held that a finding of "essential character" under GRI 2(a) can depend heavily on whether the component articles are universally recognized as being destined for incorporation into the complete article or whether they have any alternative use. *See* HQ 555610 (Feb. 1, 1991) (ruling: "As each item contains several components whose end use is readily apparent to the consumer and the assembly of these components involves a simple process, the unassembled articles, as entered, bear the essential character of their finished form");[10] HQ 952077 (Feb. 23, 1993) (ruling that yarn with no practical value outside of construction of braided packing materials had the essential character of the completed materials); HQ 953265 (May 14, 1993)

---

[10] CBP modified this ruling in, but CBP confirmed: ". . . our position as to which component, the ghost or the lite stick, provides the essential character has not changed from HRL 555610. However, our understanding of the correct scope of heading 9505 has changed . . ."

PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED

(ruling that imported wafers that did not possess common or commercial designations as unfinished LEDs did not bear the essential character of LEDs). As stated by Dr. Krause in his Declaration, there is "no other commercial use of CA 1330" than as a component of this catalyst system. Att. 3, Krause Decl. at ¶ 20; *See also* Att. 2, Dep. M. Krause at 29:14–17. CA 1330 is immediately recognizable to anyone with knowledge of the area as a supported catalyst with no value outside of this use.

CA 1330 satisfies the requirements of GRI 2(a) to be classified as a supported catalyst. It is the main component of and provides the essential character of the supported catalyst system. It has one use: in a supported catalyst system made by the polyolefin producer. And it is recognized in the trade as a supported catalyst. Accordingly, and by application of GRI 2(a), CA 1330 is properly classified under subheading 3815.19, HTSUS.

## VII.    CONCLUSION

Accordingly, classification of the subject merchandise under item 3208.90.0000, HTSUS, based on N128896 is inconsistent with the HTSUS. CA 1330 is used exclusively as part of a catalytic preparation, so classification under item 3815.19.0000, HTSUS is correct.

For the reasons set forth above, Plaintiff respectfully requests that the Court issue summary judgment in its favor and order Customs to reliquidate the subject entries with classification in Subheading 3815.19.0000 and to refund excess duties paid with interest as provided by law.

*signature page follows*

16

**PUBLIC VERSION
CONFIDENTIAL INFORMATION REMOVED**

Respectfully Submitted,

*/s/Kenneth G. Weigel*
Kenneth G. Weigel
Brian Frey
Lian Yang
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Brian.Frey@alston.com
*Counsel to LANXESS*

Dated: August 1, 2025

**PUBLIC VERSION**
**CONFIDENTIAL INFORMATION REMOVED**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Standard Chambers Procedures of the U.S. Court of International Trade,

this Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary

Judgment contains 4867 words, as determined by Microsoft Word. This word count is within the

limit of 14,000 words set forth in Rule 2(B).

*/s/Kenneth G. Weigel*
Kenneth G. Weigel
Brian Frey
Lian Yang
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Brian.Frey@alston.com
*Counsel to LANXESS*


Dated: August 1, 2025,

**PUBLIC VERSION**
**CONFIDENTIAL INFORMATION REMOVED**

## CERTIFICATE OF SERVICE

I certify that on August 5, 2025, I served a copy of the attached Motion for Summary Judgment and of the attached Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

*/s/Kenneth G. Weigel*
Kenneth G. Weigel
Brian Frey
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Brian.Frey@alston.com
*Counsel to LANXESS*

Dated: August 5, 2025

**PUBLIC VERSION**
**CONFIDENTIAL INFORMATION REMOVED**

<u>**DECLARATION OF AUTHENTICITY**</u>

I, Kenneth G. Weigel, counsel for Plaintiff, LANXESS Corporation, certify under penalty

of perjury that all documents attached to this Memorandum are accurate and authentic.

/s/*Kenneth G. Weigel*
Kenneth G. Weigel
Brian Frey
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Brian.Frey@alston.com
*Counsel to LANXESS*

Dated: August 1, 2025