UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| _____ | : | |
| LANXESS CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Court No. 23-00073 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## **ORDER**

Upon consideration of defendant's cross motion for summary judgment, plaintiff's motion for summary judgment, other papers on file, and upon due deliberation; it is hereby

**ORDERED** that defendant's cross motion be and hereby is granted;

**ORDERED** that plaintiff's motion for summary judgment is denied;

**ORDERED** that judgment is entered for defendant; and it is further

**ORDERED** that U.S. Customs and Border Protection shall reliquidate the entries of the subject merchandise before the Court under subheading 3824.99.28, Harmonized Tariff Schedule of the United States (HTSUS); and it is further

**ORDERED that** plaintiff shall pay the United States the increased duties owed as a result of the reliquidation of the entries.


_____
JUDGE

Dated: _____
         New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

—————————————————————————
                                                    :
LANXESS CORPORATION,                                :
                                                    :
                              Plaintiff,            :          Court No. 23-00073
                                                    :
            v.                                      :
                                                    :
UNITED STATES,                                      :
                                                    :
                              Defendant.            :
                                                    :
—————————————————————————

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

MARCELLA POWELL
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-9230
Attorneys for Defendant

Of Counsel:
Emma Tiner
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: September 12, 2025

## TABLE OF CONTENTS

QUESTION PRESENTED ...................................................................................... 2

INTRODUCTION ................................................................................................... 2

    A.  Merchandise at Issue/Administrative Proceedings ........................................ 2

SUMMARY OF THE ARGUMENT ...................................................................... 6

ARGUMENT .......................................................................................................... 6

  I.     STANDARD OF REVIEW ........................................................................ 6

  II.    THE STATUTORY FRAMEWORK ......................................................... 7

  III.   AXION CA 1330 IS NOT CLASSIFIABLE UNDER HEADING 3208, HTSUS .......... 9

  IV.   GR1 1 REQUIRES THE CLASSIFICATION OF AXION CA 1330 UNDER HEADING 3824, HTSUS, AND NOT HEADING 3815, HTSUS. ............................. 11

    A.  The Terms of the Headings 3815 and 3824 Are Dispositive. .................... 11

    B.  In Its Condition As Imported, Axion CA 1330 Is Not A "Reaction Accelerator" Of Heading 3815, HTSUS. ................................................... 11

    C.  Axion CA 1330 Is Not Classifiable In Subheading 3815.19.00, HTSUS. ............... 20

  V.   AXION CA 1330 IS CLASSIFIABLE UNDER HEADING 3824, HTSUS. ................. 22

CONCLUSION ...................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970) ............................................................................................ 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................ 7

*BASF Corp. v. United States*,
   482 F.3d 1324 (Fed. Cir. 2007) ......................................................................... 7

*BASF Corp. v. United States*,
   778 F. Supp. 3d 1367 (Ct. Int'l Trade 2025) .................................................. 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................... 6, 7

*Ciba Vision Corp. v. United States*,
   36 CIT 1256  (2012) ............................................................................................ 8

*Criterion Catalysts & Technologies Canada Inc. v. Canada (Border Services Agency)*,
   15 T.T.R. (2d) 165 (CITT 2010) .................................................................... 18

*Deckers Outdoor Corp. v. United States*,
   714 F.3d 1363 (Fed. Cir. 2013) ......................................................................... 8

*E.M. Chemicals v. United States*,
   920 F.2d 910 (Fed. Cir. 1990) ......................................................................... 11

*EM Indus, Inc. v. United States*,
   999 F. Supp. 1473 (Ct. Int'l Trade 1998) ........................................................ 9

*Home Depot U.S.A., Inc. v.*,
   491 F.3d 1334 (Fed. Cir. 2007) ......................................................................... 8

*James v. United States*,
   48 CCPA 75 (1961) ........................................................................................... 11

*Jarvis Clark Co. v. United States*,
   733 F.2d 873 (Fed. Cir. 1884) ........................................................................... 9

*Leather, Inc. v. United States*,
   423 F.3d 1326 (Fed. Cir. 2005) ......................................................................... 7

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................ 6

*Medline Indus. Inc. v. United States*,
    62 F.3d 1407 (Fed. Cir. 1995) ........................................................................ 11, 17

*Mita Copystar America v. United States*,
    21 F.3d 1079 (Fed. Cir.1994) ............................................................................... 8

*Nature's Touch Frozen Foods Inc. v. United States*,
    639 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) ....................................................... 10

*Orlando Food Corp. v. United States*,
    140 F.3d 1437 (Fed. Cir. 1998) ......................................................................... 8, 21

*Pima W., Inc. v. United States*,
    915 F. Supp. 399 (Ct. Int'l Trade 1996) .............................................................. 18

*S.C. Johnson & Son, Inc. v. United States*,
    415 F. Supp. 3d 1373 (Ct. Int'l Trade 2019) ....................................................... 20

*Second Nature Designs Ltd. v. United States*,
    654 F. Supp. 3d 1301 (Ct. Int'l Trade 2023) ...................................................... 9, 22

*StarKist Co. v. United States*,
    29 F.4th 1359 (Fed. Cir. 2022) ............................................................................ 21

*Sweats Fashion, Inc. v. Pannill Knitting Co.*,
    833 F.2d 1560 (Fed. Cir. 1987) ............................................................................. 7

*Telebrands Corp. v. United States*,
    865 F. Supp. 2d 1277 (2012),
    *aff'd*, 522 Fed. Appx. 915 (Fed. Cir. 2013) ........................................................ 7

*Toyota Motor Sales, U.S.A., Inc. v. United States*,
    7 Ct. Int'l Trade 178 (1984),
    *aff'd*, 753 F.2d 1061 (Fed. Cir. 1985) ................................................................ 11

*United States v. Citroen*,
    223 U.S. 407 (1912) ............................................................................................. 12

*United States v. Esso Standard Oil Co.*,
    42 CCPA 144 (1955) ............................................................................................ 11

*United States v. Pan Pac. Textile Group Inc.*,
    276 F. Supp. 2d 1316 (2003) ................................................................................. 6

**Harmonized Tariff Schedule of the United States**

General Rule of Interpretation 1 ..........................................................................*passim*

General Rule of Interpretation 2(a)......................................................10, 18, 19, 20

    Explanatory Note ...........................................................................................19

General Rule of Interpretation 6 ..............................................................7, 18, 21

Chapter 32

    Heading 3208 ...................................................................................2, 9, 10

      Subheading 3208.90.90...............................................................................2

Chapter 38

    Heading 3815 ...................................................................................*passim*

      Explanatory Note ...................................................................................15, 18

      Subheading 3815.19.00 .........................................................................3, 10, 18

    Heading 3818 .......................................................................................20

    Heading 3824 ...................................................................................*passim*

      Subheading 3824.99.28........................................................................1, 21, 22, 23

**Rules**

USCIT Rule 30(b)(6) ........................................................................................12

USCIT Rule 56) ...............................................................................................6

USCIT Rule 56(c) .............................................................................................6

**Other Authorities**

NY N128896 (Nov. 10, 2010)........................................................................2

NY N300749 (Oct. 18, 2018) .......................................................................20

HQ 554581 (July 2, 1987) .............................................................................20

HQ 083957 (May 14, 1989)..........................................................................20

HQ 555610 (Feb. 1, 1991) ............................................................................20

HQ 952077 (Feb. 23, 1993)..........................................................................20

HQ 953265 (May 14, 1993).............................................................................................. 20

HQ 958492 (August 13, 1996)........................................................................................ 20

TRIMETHYLALUMINUM, *NIH Nat'l Lib. of Medicine: Nat'l Ctr. for Biotech. Info.,*
available at  https://pubchem.ncbi.nlm.nih.gov/compound/Trimethylaluminum.................................. 3

SUPPORT, *IUPAC Compendium of Chemical Terminology, 5th ed. International Union of Pure and Applied Chemistry,*
available at https://doi.org/10.1351/goldbook.S06147........................................................ 3

TOLUENE, *Merriam Webster,*
available at https://www.merriam-
webster.com/dictionary/toluene#:~:text=Medical%20Definition-
,toluene,called%20also%20methylbenzene....................................................................... 3

OLEFIN, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/olefin .............................................. 3

METALLOCENE, *Dictionary.com,*
available at https://www.dictionary.com/browse/metallocene................................................... 4

METALLOCENE, *International Union of Pure Applied Chemistry,*
available at https://goldbook.iupac.org/terms/view/M03865 .................................................. 4

OLEFIN, *McGraw–Hill Dictionary of Scientific and Technical Terms 1468* (6th ed., E. Geller ed., McGraw–Hill 2003),............................................................................................ 5

OLEFIN *Hawley's Condensed Chemical Dictionary* 817 (14th ed., R.J. Lewis, Sr., ed., John Wiley & Sons, Inc.2001 )......................................................................................... 5

REACTION, *Merriam Webster,*
available at https:// www.merriam-webster.com/dictionary/chemical%20reaction.............................. 12

REACTION, *Britannica.com,*
available at https://www.britannica.com/question/What-are-the-basics-of-chemical-reactions .............. 12

ACCELERATOR, *Merriam Webster,*
available at https://www.merriam-
webster.com/dictionary/accelerator#:~:text=%3A%20a%20substance%20that%20speeds%20a%20chemical%20reaction................................................................................................... 12

CATALYSTS, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/catalyst ........................................... 16

CATALYSTS, *Britannica.com,*
available at https://www.britannica.com/science/catalyst.................................................... 16

CATALYSTS, *IUPAC Compendium of Chem. Term,*

available at https://goldbook.iupac.org/terms/view/C00876 ..................................................16

CATALYTIC, *Cambridge Dictionary,*
available at https://dictionary.cambridge.org/us/dictionary/english/catalytic ..........................17

PREPARATION, *Collins English Dictionary,*
available at https://www.collinsdictionary.com/dictionary/english/preparation#preparation__1 ...........17

INDUSTRY, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/industry ......................................21

CHEMICAL, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/chemical ...............................21

CHEMISTRY, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/chemistry ...........................21

AROMATIC-COMPOUND, *Britannica.com,*
available at https://www.britannica.com/science/aromatic-compound ....................................22

MIXTURE, *Cambridge Dictionary,*
available at https://dictionary.cambridge.org/us/dictionary/english/mixture ...........................22

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

———————————————————————
                                                          :
LANXESS CORPORATION,                   :
                                                          :
                          Plaintiff,           :              Court No. 23-00073
                                                          :
            v.                                        :
                                                          :
UNITED STATES,                                 :
                                                          :
                          Defendant.       :
———————————————————————:

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF <u>DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT</u>

Defendant, the United States (the Government), submits this memorandum in opposition to plaintiff's motion for summary judgment and in support of its cross motion for summary judgment.  For the reasons set forth below, we respectfully request that the Court enter an Order: (1) granting our cross motion for summary judgment; (2) denying plaintiff's motion for summary judgment; (3) entering judgment that the imported merchandise covered by this case is classifiable under subheading 3824.99.28 (2020), Harmonized Tariff Schedule of the United States (HTSUS); (3) ordering U.S. Customs and Border Protection to reliquidate the entries under this tariff provision; and (5) ordering plaintiff to pay the United States the increased duties owed as a result of the reliquidation of the entries.

### <u>RELEVANT STATUTORY PROVISIONS AND EXPLANATORY NOTES</u>

The relevant statutory provisions and their corresponding Explanatory Notes are

contained in Addendum A to this memorandum.[1]

## QUESTION PRESENTED

Whether the imported Axion CA 1330 is properly classifiable in heading 3815,[2] HTSUS, as a "reaction accelerator," or heading 3824,[3] HTSUS, as a preparation of the chemical or allied industries.

## INTRODUCTION

### A.    Merchandise at Issue/Administrative Proceedings

This case involves the proper tariff classification of Axion CA 1330, which was imported in twenty-two (22) entries made at the ports of Norfolk, VA, Baltimore, MD, and Houston, TX from the period of June through November 2020. *See* Summons, ECF No. 1. U.S. Customs and Border Protection (CBP) classified Axion CA 1330 upon liquidation under subheading 3208.90.00, HTSUS,[4] as a paint or varnish dutiable at 3.2% *ad valorem*. Classification under heading 3208, HTSUS, was predicated on an administrative ruling, NY N128896 (Nov. 10, 2010), involving a product similar to Axion CA 1330 and issued to Chemtura, a predecessor of Lanxess.

---

[1] All references to the HTSUS and Explanatory Notes are to the versions that were in effect in 2020, when the subject merchandise was entered.

[2] Heading 3815, HTSUS, covers "[r]eaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included:"

[3] Heading 3824, HTSUS, covers "[p]repared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included:"

[4] Subheading 3208.90.90, HTSUS, covers "[p]aints and varnishes (including enamels and lacquers) based on synthetic polymers or chemically modified natural polymers, dispersed or dissolved in a nonaqueous medium; solutions as defined in note 4 to the chapter: Other."

As we explain further below, during the course of developing the evidentiary record in this litigation, the undisputed facts prompted the United States to conclude that heading 3208, HTSUS, is not the appropriate classification of Axion CA 1330, as was determined at liquidation. Rather, the undisputed facts show that it is properly classified under subheading 3824.99.28, HTSUS, as a preparation of the chemical or allied industries.

Lanxess asserts that Axion CA 1330 is classifiable as a "reaction accelerator" under heading 3815, HTSUS, and specifically, as a "supported[5] catalyst" under subheading 3815.19.00, HTSUS,[6] duty free.  Pl. Br. at 9.

In its condition as imported, Axion CA 1330 is a mixture in liquid form of toluene (CAS-No. 108-88-3), methylaluminoxane (MAO), and trimethylaluminum (TMA), with rough approximate percentages of 50-70% toluene, 30-50% MAO, and 1-5% TMA.  Toluene is an aromatic substance that is used as a solvent in Axion CA 1330.[7]  MAO is a mixture of organoaluminium compounds with the approximate formula $(Al(CH_3)O)_n$.  TMA is an organoaluminum compound with formula $C_3H_9Al$, used in the production of MAO.  *See*

---

[5] A "support" in this context, is defined as follows: "In multiphase catalysts, the active catalytic materials often present as the minor component dispersed upon a support sometimes called a carrier.  The support may be catalytically inert but it may contribute to the overall catalytic activity."  *IUPAC Compendium of Chemical Terminology, 5th ed. International Union of Pure and Applied Chemistry (Online version 5.0.0, 2025),* https://doi.org/10.1351/goldbook.S06147.

[6] Subheading 3815.19.00, HTSUS, covers "[r]eaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included: supported catalysts: Other."

[7] Toluene is "a liquid aromatic hydrocarbon $C_7H_8$ that resembles benzene but is less volatile, flammable, and toxic and is used especially as a solvent, in organic synthesis, and as an antiknock agent for gasoline."  *See Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/toluene#:~:text=Medical%20Definition-,toluene,called%20also%20methylbenzene (last visited Sept. 8, 2025).

"Trimethylaluminum," *NIH Nat'l Lib. of Medicine: Nat'l Ctr. for Biotech. Info.*,

https://pubchem.ncbi.nlm.nih.gov/compound/Trimethylaluminum (last visited Sept. 11, 2025).

Axion CA 1330 is the trade name for Lanxess's MAO.  *See* Ex. A, Krause Dep. Tr. at

5:16-6:18.  Lanxess's customers are domestic companies that manufacture polypropylene and

polyethylene, through a process called olefin polymerization.[8]  Polypropylene and polyethylene

are considered thermoplastics that are used to make items such as milk jugs, candy bar wrappers

and Saran Wrap.  *See* Ex. A, Deposition Transcript of Michael Krause (Krause Dep. Tr.) at

26:19-27:13.  Catalysts are crucial for the olefin polymerization process and the final products.

A catalyst "support" is a solid material or carrier with a high surface area upon which the

active material [is placed.  *See* Ex. A, Krause Dep. Tr. at 27:19-28:19.  The larger surface allows

for more catalytic centers –"the atom or atoms where the chemistry occurs" – to exist.  *Id.* at

34:16-23.  Lanxess's customers use Axion CA 1330 as one component of a three-part supported

catalyst system comprised of Axion CA 1330, metallocene[9], and an inert solid support, such as

silica gel.  Lanxess's customers select the metallocene and support of their choice without input

from Lanxess.  *Id.* at 34:3-15.  In its condition as imported, Axion CA 1330 consists solely of

---

[8] An "olefin" is "a synthetic fiber (such as polypropylene) derived from an alkene." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/olefin (last accessed June 6, 2026).  Polymerization "a chemical reaction in which two or more molecules combine to form larger molecules that contain repeating structural units." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/polymerization (last accessed June 6, 2025).

[9] Metallocene is "an organometallic coordination compound consisting of a metal bonded to one or two rings of cyclopentadiene."  Dictionary.com, https://www.dictionary.com/browse/metallocene (last visited Sept. 8, 2025); International Union of Pure Applied Chemistry, https://goldbook.iupac.org/terms/view/M03865 (last visited Sept. 8, 2025) (metallocenes are "[o]rganometallic *coordination* compounds in which one atom of a transition metal such as iron, ruthenium or osmium is bonded to and only to the face of two cyclopentadienyl as *ligands* which lie in parallel planes. The term should not be used for analogues having rings other than cyclopentadienyl as *ligands*.")

MAO and TMA, suspended in toluene (to keep the mixture stable), and is **not** deposited on a support. *See* Ex. A, Kraus Dep. Tr. At 30:20-23. Thus, AXION CA 1330 can only serve its intended function of activating the metallocene **after** post-importation processing performed by Lanxess's customers. Specifically, Lanxess's customers mix Axion CA 1330 with a small amount of a customer-selected metallocene, which, when activated by Axion CA 1330, functions as the catalytic center of olefin[10] polymerization. The mixture of these two substances is then placed on a support, typically, silica gel, to form a functional supported catalyst system. *Id*. at 29:18-30:15; 32:11-33:16.

The manner in which Axion CA 1330 activates the metallocene involves several distinct steps. The MAO component of Axion CA 1330 removes an alkyl group (like a methyl group) from the metallocene. This step, called alkylation, creates a positively charged form of the metallocene (metallocene cation), which is the actual catalytic center that drives olefin polymerization. The MAO serves as an anion, a weakly negatively charged species, necessary to stabilize the active metallocene. Only after this process occurs can the metallocene function as the catalyst in olefin polymerization. *Id*. at 32-11:33-16. *See also* Ex. B, No. 17, Pl.'s Resp. to Def.'s Interrogatories. These steps are repeated during the ongoing polymerization process until the Axion CA 1330 is fully consumed, at which point the process terminates.

---

[10] An "olefin" is "[a] family of unsaturated, chemically active hydrocarbons with one carbon-carbon double bond; includes ethylene and propylene." *McGraw–Hill Dictionary of Scientific and Technical Terms* 1468 (6th ed., E. Geller ed., McGraw–Hill 2003) ("McGraw–Hill"). Olefins "are named after the corresponding paraffins by adding -*ene* or -*ylene* to the stem." *Hawley's Condensed Chemical Dictionary* 817 (14th ed., R.J. Lewis, Sr., ed., John Wiley & Sons, Inc. 2001) (Hawley's).

## SUMMARY OF THE ARGUMENT

The proper classification of Axion CA 1330 is determined through application of Rule 1 of the General Rules of Interpretation (GRI).  Lanxess argues that its imported Axion CA 1330 is classifiable in heading 3815, HTSUS, as a "reaction accelerator."  However, the undisputed facts establish that, at importation, Axion CA 1330 is a finished product comprised only of MAO, TMA, and toluene, and it is not deposited on a support.  Those facts are dispositive.  Merchandise must be classified in its condition as imported.  Axion CA 1330, in its condition as imported, cannot increase the rate of a reaction.  Accordingly, Axion CA 1330 is not classifiable as a "reaction accelerator" of heading 3815, HTSUS.

By contrast, the undisputed facts further establish that Axion CA 1330 **is** covered by heading 3824, HTSUS, as a preparation of the chemical industries.  Lanxess is a specialty chemical company.  Axion CA 1330 is a chemical prepared or made up for use or application in a chemical reaction – specifically, to activate the metallocene in a supported catalyst system, which then acts as the catalyst in the olefin polymerization process.  Because Axion CA 1330 falls within heading 3824, HTSUS, the Court need not address Lanxess's remaining arguments concerning classification at the subheading level of heading 3815, HTSUS.

The record shows that there is no material fact in dispute and that the merchandise is properly classifiable under subheading 3824.99.28, HTSUS.

## ARGUMENT

### I.     STANDARD OF REVIEW

Under Rule 56 of the United States Court of International Trade, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of fact exists, the court reviews the evidence submitted, drawing all inferences against the moving party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (2003); *see also Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial.  *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The movant may satisfy this burden by noting that the party who will bear the ultimate burden of proof at trial cannot support an essential element of its claim. *See, e.g., Celotex*, 477 U.S. at 322-23.

Here, there are no genuine material issues of fact regarding the chemical composition of Axion CA 1330, or its use, function, and purpose.  Therefore, this action involves only questions of law and is ripe for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986); *Celotex,* 477 U.S. at 325-328; *Sweats Fashion, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562-63 (Fed. Cir. 1987).

## II.    THE STATUTORY FRAMEWORK

In construing the HTSUS, the Court is bound by the General Rules of Interpretation (GRIs), which must be applied in numerical order.  *BASF Corp. v. United States*, 482 F.3d 1324, 1326 (Fed. Cir. 2007).  GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes."  The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005).  "The HTSUS is designed so that most classification questions can be answered by GRI 1."  *Telebrands Corp. v.*

*United States*, 865 F. Supp. 2d 1277, 1280 (2012), *aff'd*, 522 Fed. Appx. 915 (Fed. Cir. 2013).

"What is clear from the legislative history of the World Customs Organization and case law is

that GRI 1 is paramount . . . The HTSUS is designed so that most classification questions can be

answered by GRI 1, so that there would be no need to delve into the less precise inquiries …."

*Id.*

      GRI 6 governs the classification of merchandise within a subheading and requires the

sequential reapplication of GRIs 1 through 5 to the particular subheadings under consideration.

GRI 6 ("[C]lassification of goods in the subheading of a heading shall be determined according

to the terms of those subheadings any related notes, mutatis mutandis, to the above rules.").

      Courts may look to the Explanatory Notes (ENs) to the Harmonized Commodity

Description and Coding System, maintained by the World Customs Organization, as persuasive

authority on how to interpret and apply HTSUS provisions.  *See Home Depot U.S.A., Inc. v.* 491

F.3d 1334, 1336 (Fed. Cir. 2007).  "[A]lthough the Explanatory Notes 'do not constitute

controlling legislative history,' they serve a critical function as an interpretative supplement to

the HTSUS, and 'are intended to clarify the scope of HTSUS [provisions,] and to offer guidance

in interpreting [those provisions].'"  *See Ciba Vision Corp. v. United States,* 36 CIT 1256 n.12

(2012) *(citing Mita Copystar America v. United States,* 21 F.3d 1079, 1082 (Fed. Cir.1994)).

      In this action, GRI 1 resolves the classification of Axion CA 1330.  Therefore, it is not

necessary to resort to the remaining GRIs.  The plain language of headings 3815 and 3824,

further supported and corroborated by the relevant chapter notes, section notes, and Explanatory

Notes, establishes that Axion CA 1330 is properly classifiable under heading 3824, HTSUS.

**III.    AXION CA 1330 IS NOT CLASSIFIABLE UNDER HEADING 3208, HTSUS.**

As the evidentiary record developed in this litigation, the undisputed facts prompted the United States to reevaluate the classification of the imported merchandise at liquidation under subheading 3208.90.00, HTSUS, as a paint or varnish.  Upon further review, the undisputed facts show that the proper classification of the merchandise is under subheading 3824.99.28, HTSUS, as a preparation of the chemical or allied industries.  During discovery, the Government notified Lanxess of our view of this classification of the imported merchandise (*i.e.*, subheading 3824.99.28), and that we were no longer pursuing classification under heading 3208, HTSUS. *See* Ex. B, Resp. No. 17, Def.'s Response to Pl.'s Interrog.

Subheading 3824.99.28 carries a higher duty rate than subheading 3208.90.00. Historically, when the Court determined that the proper classification of imported merchandise called for an increase in duties, "the court could only dismiss the action, without requiring the plaintiff to pay any additional duties."  *Cormorant Shipholding Corp. v. United States*, 617 F. Supp. 2d 1270, 1276 n.17 (Ct. Int'l Trade 2009).  Congress "remedied this problem" through 28 U.S.C. § 1583, which, in Congress' words, "permits the [G]overnment to 'assert[ ] a claim that would allow the court to make the proper determination and accordingly would enable the Government to collect the full amount of duties.'"  *Id*. (quoting H.R. Rep. No. 96–1235 at 36 (1980)); *see Tikal Distributing Corp. v. United States*, 93 F. Supp. 2d 1269, 1275 n.4 (Ct. Int'l Trade 2000); *Tomoegawa (U.S.A.), Inc. v. United States*, 763 F. Supp. 614, 621 (Ct. Int'l Trade 1991); *Eastalco Aluminum Co. v. United States*, 750 F. Supp. 1135, 1138–40 (Ct. Int'l Trade 1990), *vacated on other grounds*, 995 F.2d 201 (Fed. Cir. 1993).  Consistent with this backdrop, as a historical practice, the United States would pursue a counterclaim to assert a classification provision that carries a higher duty rate than the provision that was determined at liquidation.

More recently, however, despite 28 U.S.C. § 1583, the Court has held that the Government should not pursue a counterclaim but instead raise the new classification as a defense. *See generally Second Nature Designs, Ltd. v. United States*, 654 F. Supp. 3d 1301 (Ct. Int'l Trade 2023); *Maple Leaf Mktg., Inc. v. United States*, 639 F. Supp. 3d 1363 (Ct. Int'l Trade 2023); *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334 (Ct. Int'l Trade 2022); *Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022). In accord with these recent holdings, the United States asserts subheading 3824.99.28, HTSUS, as a defense in this case. Should the Court prefer that the United States amend its answer and assert a counterclaim for this classification, we stand at the ready to do so.

This procedural distinction (*i.e.*, a defense or counterclaim) has no practical impact regarding judgment. In determining the correct classification of an imported good, this Court has an obligation "to reach a correct result." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). And "the court's ability to order the payment of increased duties from [an importer] does not depend on whether there is a counterclaim." *Second Nature Designs*, 654 F. Supp. 3d at 1307 n.6 (citing 28 U.S.C. § 2643(b) (authorizing the court to order procedures as it "considers necessary to enable it to reach the correct decision"); *id.* § 2643(c)(1) (authorizing the court to "order any other form of relief that is appropriate in a civil action"); and *Cyber Power*, 586 F. Supp. 3d at 1333 n.15 (distinguishing Cormorant because "that court analyzed whether the [CIT] had jurisdiction over the United States' counterclaim pursuant to 28 U.S.C. § 1583," not whether the counterclaim stated a claim)). Therefore, should the Court grant the Government's cross-motion for summary judgment classifying the subject merchandise in subheading 3824.99.28, HTSUS, the Court should order reliquidation at the applicable duty rate and payment of the outstanding duties, fees, and interest.

10

**IV.    GRI 1 REQUIRES THE CLASSIFICATION OF AXION CA 1330 UNDER HEADING 3824, HTSUS, AND NOT HEADING 3815, HTSUS.**

**A.    The Terms of Headings 3815 and 3824, HTSUS, Are Dispositive.**

GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes …"  Thus, the first step in the classification analysis is the language of the headings.  *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 (Fed. Cir. 2013).  "Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise."  *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998).

The two HTSUS headings at issue are:

> 3815:    Reactions initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included:

> 3824:    Prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included:

Both headings 3815 and 3824, HTSUS, contain the phrase "not elsewhere specified or included." which indicates that those headings are basket provisions.  Accordingly, headings 3815 and 3824, HTSUS, are mutually exclusive, and, as we show below, Axion CA 1330 does not fall within heading 3815, HTSUS.  Heading 3824, HTSUS, is the correct classification for Axion CA 1330.

**B.    In Its Condition As Imported, Axion CA 1330 Is Not A "Reaction Accelerator" Of Heading 3815, HTSUS.**

At the outset of its brief, Lanxess unequivocally concedes that Axion CA 1330 "cannot fulfill its purpose of accelerating reactions in its imported state . . . ."  Pl.'s Br. at 9.  However, Lanxess maintains that, pursuant to GRI 2(a), Axion CA 1330 is classifiable in subheading

3815.19.00, HTSUS, as a "supported catalyst" because it has the essential character of a supported catalyst system. *Id.* Specifically, Lanxess first argues that the tariff term "reaction accelerators" is defined as "articles that accelerate a reaction." *Id.* According to Lanxess, a "[c]atalyst, catalyst preparation, and catalyst system are all terms that describe articles that accelerate a reaction." *Id.* Lanxess then argues that the Explanatory Notes to heading 3815, HTSUS, specifically cover preparations that initiate or accelerate certain chemical processes, and points out that the Explanatory Notes subdivide "these products into two groups: Supported Catalysts and Other." Pl.'s Br. at 10-11. Lanxess posits that Axion CA 1330 is known as and used exclusively as a component in a supported catalyst in olefin polymerization, and that its customers use Axion CA 1330 as a supported catalyst. *Id.* Lanxess then concludes that Axion CA 1330 is a "reaction accelerator" of heading 3815, HTSUS.

Lanxess's argument is legally and factually flawed. Lanxess completely skips GRI 1 in its analysis. The term "supported catalyst" does not appear in heading 3815, HTSUS, and it cannot be read into the heading. Indeed, "headings must be chosen without any reference to subheadings." *Nature's Touch Frozen Foods Inc. v. United States*, 639 F. Supp. 3d 1287, 1300 (Ct. Int'l Trade 2023). If a good is not covered by the actual terms of the heading, then the analysis of that heading ends and the court does not consider the subheadings.

In its condition as imported, Axion CA 1330 is a finished good that is merely an intermediate component that cannot perform as a catalyst on its own. It requires post-importation processing—including the addition of distinct chemical products—in order to achieve its intended purpose as an activator in a supported catalyst system. As such, Axion CA 1330 is not covered by the terms of heading 3815, HTSUS.

Pursuant to GRI 1, the terms of the heading are paramount.  Heading 3815, HTSUS, provides for "reaction initiators, reaction accelerators, and catalytic preparations, not elsewhere specified or included."   The tariff term "reaction accelerator" is not defined in the HTSUS. Where a tariff term is not statutorily defined, statutory language is presumed to be used in its ordinary sense.  *See United States v. Esso Standard Oil Co.,* 42 CCPA 144, 151 (1955); *James v. United States*, 48 CCPA 75 (1961).  Such terms are construed in accordance with their common and commercial meaning, which are presumed to be the same.  *See E.M. Chemicals v. United States*, 920 F.2d 910, 913 (Fed. Cir. 1990) ("[t]ariff terms are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent."); *Toyota Motor Sales, U.S.A., Inc. v. United States*, 7 Ct. Int'l Trade 178, 182 (1984), *aff'd*, 753 F.2d 1061 (Fed. Cir. 1985).  The common meaning of a tariff term is a question of law that the court may answer by relying upon its own understanding of the term, and by consulting dictionaries, lexicons, scientific authorities, and other reliable sources as an aid.  *Medline Indus. Inc. v. United States*, 62 F.3d 1407, 1409 (Fed. Cir. 1995).  Therefore, inasmuch as the tariff term "reaction accelerator" is not statutorily defined, the term's correct meaning is its common meaning.

In the context of chemistry, a "reaction" is defined as "a chemical change that occurs when two or more substances combine to form a new substance."  *Merriam-Webster Online Dictionary*, www.merriam-webster.com/dictionary/chemical%20reaction (last visited Sept. 8, 2025).  *See also Britannica.com*, https://www.britannica.com/question/What-are-the-basics-of-chemical-reactions (last visited Sept. 8, 2025) ("A chemical reaction is a process in which one or more substances, also called reactants, are converted to one or more different substances, known as products.").  An "accelerator" is a "a substance that speeds a chemical reaction."  *Merriam-Webster Online Dictionary*, https://www.merriam-

webster.com/dictionary/accelerator#:~:text=%3A%20a%20substance%20that%20speeds%20a%20chemical%20reaction (last visited Sept. 8, 2025).  Based on the foregoing definitions of the terms "reaction" and "accelerator," a "reaction accelerator" is a substance that increases the speed of a chemical reaction or the chemical change of two or more substances into a new substance.

It is well-settled that an article is to be classified in the condition in which it is imported. *United States v. Citroen*, 223 U.S. 407 (1912).  Here, in its condition as imported, Axion CA 1330 is not a reaction accelerator as it cannot increase the speed or rate of olefin polymerization. At importation, Axion CA 1330 consists solely of toluene, MAO, and TMA, and is not deposited on silica gel or any other support.  *See* Ex. A, Krause Dep. Tr. at 30:20-23; Pl.'s MSJ Ex. 5, No. 21, Pl.'s Resp. to Def.'s Interrog.; Pl.'s Br. at 9.  During the USCIT 30(b)(6) deposition of Lanxess's designated agent, Michael Krause, he explained Axion CA 1330's imported condition as follows:

> Q.    With respect to Axion CA1330, when it is sold to the customer, is it on a support?
>
> A.    No.

*See* Ex. A, Krause Dep. Tr. at 30:20-23.

Lanxess sells Axion CA 1330 to its domestic customers for the specific purpose of incorporation as a component in a supported catalyst system, a function it can serve only **after** processing following importation which consists of combining it with metallocene and putting the mixture on a support.  The supported catalyst system consists of MAO (the main active ingredient in Axion CA 1330), metallocene, and silica gel.  Indeed, during his deposition,

14

Lanxess's designated agent described the components of the post-importation supported catalyst

system as follows:

> Q.    When you say supported catalyst systems, would you sort
>       of explain what that system consists of?
>
> A.    Okay. The -- there is a great deal of know-how and
>       proprietary knowledge associated with this but at a high
>       level, in particular for MAO containing catalysts, there is
>       typically the MAO solution, in other words, the Axion
>       CA1330 that is reacted with a metallocene compound
>       which is another kind of organometallic compound and
>       then those two things are typically brought into the
>       presence of the silica gel; and they are -- the solution that
>       you bring in there is dried to drive off most, if not all, the
>       toluene and that leaves a solid and we call it supported on
>       the silica.
>
>       So, ultimately, all that in this particular case those three
>       components are referred to as a supported catalyst system.
>
> Q.    And when you say the three components, do you mean the
>       MAO, the metallocene compound, and the silica?
>
> A.    Correct.

*See* Ex. A, Krause Dep. Tr. at 29:18-30:19.

The precise post-importation processing performed by Lanxess's customers is

proprietary.  However, generally, Lanxess's domestic customers add a small amount by weight of

metallocene to Axion CA 1330 and then deposit the mixture on a support, typically, silica gel.

During his deposition, Dr. Krause explained the post-importation processing:

> Q.    Is the response to [interrogatory] number 22 accurate?
>
> A.    Yes.
>
> Q.    Is there anything Lanxess would add to that response?

> A.    Yes. I think that Lanxess sells the MAO to a customer who
> then adds a metallocene and silica gel to it, and then they
> perform whatever operations they perform. It is not -- we
> do not know exactly how the customer does that. We don't
> know how much TMA is left or removed or not removed.
> We don't know exactly how much toluene is left. We, you
> know, this is really how our -- this is our customer's
> proprietary information; and we really don't have access to
> it, but the response I give you here in general on a high
> level is accurate.

*See* Ex. A, Krause Dep. Tr. 52:16-53:10.  Accordingly, in its imported condition, Axion CA 1330 is one component of a catalyst system which cannot serve as a reaction accelerator for olefin polymerization.

Furthermore, Axion CA 1330's intended role is to activate the metallocene in the supported catalyst system, not to act as the catalytic center for polymerization itself.  Dr. Krause explained the function of Axion CA 1330 in the supported catalyst system as follows:

> A.    In this case, the Axion CA1330 also alkylates the
> metallocene center and then it also, you know, forms that
> active catalyst; but then it also as of the third function,
> which is it forms -- it acts as the anion to that catalyst
> cation.

*See* Ex. A, Krause Dep. Tr. at 88:22-89:3.  As explained above, Axion CA1330 can perform these functions only **after** it is combined with metallocene and placed on a support such as silica gel following its importation into the United States.

Furthermore, the Explanatory Notes (ENs) to heading 3815, HTSUS, show that Axion CA 1330 is not classifiable under heading 3815, HTSUS.  The ENs state:

> This heading covers preparations which initiate or accelerate
> certain chemical processes. . . .

> These preparations fall broadly into two groups:

(a)     Those in the first group are, in general, composed either of one or more active substances deposited on a support (known as "supported catalysts") or of mixtures with a basis of active substances. In the majority of cases, these active substances are certain metals, metallic oxides, other metallic compounds or mixtures thereof. The metals most frequently used as such or as compounds are cobalt, nickel, palladium, platinum, molybdenum, chromium, copper or zinc. The support, sometimes activated, generally consists of alumina, carbon, silica gel, siliceous fossil meal or ceramic materials. Examples of "supported catalysts" are supported Ziegler or Ziegler–Natta types.

*See* Explanatory Notes to heading 3815, HTSUS.  The ENs clarify that heading 3815, HTSUS, is limited to goods that, in their condition as imported, initiate or accelerate a chemical reaction. The ENs also state that goods that fall within heading 3815 consist of "supported catalysts" or "mixtures with a base of active substances," which are typically metals, metallic oxides, or other metallic compounds such as cobalt, nickel, palladium, platinum, molybdenum, chromium, copper, or zinc.

Axion CA 1330 does not satisfy the criteria set forth in the ENs.  In its condition at importation, Axion CA 1330 does not initiate or accelerate a chemical reaction and is not deposited on a support.  *See* Ex. A, Krause Dep. Tr. at 30:20-23; Pl.'s MSJ Ex. 5, No. 21, Pl.'s Resp. to Def.'s Interrog.; Pl.'s Br. at 9.  In fact, Axion CA 1330 requires post-importation processing by the purchaser, including the addition of metallocene and deposit on a support.  Ex. A, Krause Dep. Tr. at 29:18-30:19.  As such, Axion CA 1330 is not a "reaction accelerator" and therefore is not classifiable under heading 3815, HTSUS.

Lanxess argues that "catalysts," "catalyst systems," and "catalytic preparations" are interchangeable, and that they each refer to a substance that can accelerate a reaction.  Pl.'s Br. at 10.  Those three terms, however, have distinct meanings, and none of them describe Axion CA 1330.  A "catalyst" is a "substance that enables a chemical reaction to proceed at a usually faster

17

rate or under different conditions (as at a lower temperature) than otherwise possible, without itself being consumed. *See* "Catalyst," *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/catalyst (last visited Sept. 4, 2025); "Catalyst," *Encyclopedia Britannica*, https://www.britannica.com/science/catalyst (last visited Sept. 3, 2025); *see also* "Catalyst," *IUPAC Compendium of Chem. Term.*, 5TH ED. INT'L UNION OF PURE & APPLIED CHEM. (Online version 5.0.0, 2025), https://goldbook.iupac.org/terms/view/C00876. To fall within this definition, a substance must itself be capable, at the time of importation, of accelerating the rate of a chemical reaction. Axion CA 1330 does not meet this standard. In its imported condition, it consists solely of toluene, MAO and TMA, and lacks both a support and the presence of a metallocene. See Pl.'s MSJ, Ex. 5, No. 2, Pl.'s Resp. to Def.'s Interrog. Without those post-importation additions, Axion CA 1330 cannot alter the rate of olefin polymerization and therefore cannot function as a catalyst. Pl. Br. at 9. Rather, Axion CA 1330 is only one component of a supported catalyst system, which only becomes functional after post-importation processing by the Lanxess's domestic customers. *See* Ex. A, Krause Dep. Tr. at 29:18-30:15. Significantly, Lanxess conceded that Axion CA 1330, standing alone, is not a catalyst:

> Q.     Okay. With respect to Paragraph No. 7 [of the Complaint], thank you, I think I do understand it. I just have one -- I just have one more question just to sort of tie it up in a bow, make sure I understand it.
>
>         For purposes of Axion CA1330, is it a catalyst?
>
> A.     Okay. It is used in conjunction with other materials and all together, these other materials -- all of them together form a catalyst.

*See* Ex. A, Krause Dep. Tr. at 20:8-21.

A "catalyst system" is a group of materials, that in combination, cause chemical reactions to begin. A catalytic system consists of multiple components, and all components must be present in order to accelerate the reaction. The metallocene and support must be added by the Lanxess's customer after importation to form a functional catalyst system. As imported, Axion CA 1330 is not a catalyst system.

Finally, the term "catalytic preparation" is a term of heading 3815, HTSUS, and it is not defined in the HTSUS. Accordingly, the definition of the term can be ascertained by consulting dictionaries, lexicons, scientific authorities, and other reliable sources as an aid. *Medline Indus. Inc.*, 62 F.3d at 1409. "Catalytic" is defined as "making a chemical reaction happen more quickly by using a catalyst." *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/catalytic (last visited Sept. 8, 2025). A "preparation" is "a substance specifically prepared, or made up for its appropriate use or application, *e.g*, as food or medicine, or in the arts or sciences." 12 Oxford English Dictionary 374 (2d. 3d. 1989); *see also Collins English Dictionary*, https://www.collinsdictionary.com/dictionary/english/preparation#preparation__1 (last visited Sept. 8, 2025). Based on the foregoing definitions, a "catalytic preparation" for purposes of heading 3815, HTSUS, is a substance specially prepared or made up to function as a catalyst (*i.e*., to enable a chemical reaction to accelerate without itself being consumed in the reaction).

Axion CA 1330 is not a "catalytic preparation" because, in its imported condition, it cannot accelerate a chemical reaction, is not deposited on a support, and lacks the metallocene component necessary to create the catalytic center. Simply put, Axion CA 1330 cannot function as a catalyst in its condition as importation. *See, e.g.*, *Criterion Catalysts & Technologies Canada Inc. v. Canada (Border Services Agency)*, 15 T.T.R. (2d) 165 (CITT 2010) (holding that

heading 3815, HTSUS, only encompasses goods that are active in their condition upon importation).

### C.     Axion CA 1330 Is Not Classifiable In Subheading 3815.19.00, HTSUS.

We have established that Axion CA 1330 is not classifiable in heading 3815, HTSUS. When a GRI 1 analysis of the competing headings is dispositive, the Court does not perform a GRI 6 analysis of subheadings. *Pima W., Inc. v. United States*, 915 F. Supp. 399, 403 (Ct. Int'l Trade 1996). For completeness, however, we will address Lanxess's claim that Axion CA 1330 is classified as a "supported catalyst" in subheading 3815.19.00, HTSUS, pursuant to GRI 2(a). By its express terms, a "supported catalyst" requires a catalyst that is deposited on a support. *See* ENs to 3815, HTSUS. Lanxess concedes that, in its condition at importation, Axion CA 1330 is not a catalyst and not deposited on a support. Pl.'s Br. at 12. ("Although as imported, [Axion] CA 1330 does not yet have the support, this is because it is the U.S. polyolefin producer who uses CA 1330 to make the catalytic preparation or catalyst system." ). Until the post-importation processing performed by Lanxess's customers, Axion CA 1330 is a component of a supported catalyst system, but not a supported catalyst itself.

In an effort to overcome the dispositive fact that Axion CA 1330 is not a supported catalyst at the time of importation, Lanxess argues that the classification of Axion CA 1330 at the subheading level is governed by GRI 2(a). Lanxess argues that Axion CA 1330 is an incomplete or unfinished "supported catalyst" that nonetheless has the "essential character" of such a catalyst. Pl.'s Br. at 13-16. According to Lanxess, Axion CA 1330 provides the essential character to the MAO and metallocene supported catalyst system. *Id*. at 13.

This argument fails. Axion CA 1330 is a finished commercial good at importation which precludes the application of GRI 2(a). Moreover, as explained below, GRI 2(a) does not apply to

goods classifiable in Section VI of the HTSUS, which covers Chapter 38, which, in turn, covers both competing headings under consideration: 3815 and 3824.

GRI 2(a) provides:

> 2. (a)    Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also be taken to include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.

> The Explanatory Note to GRI 2(a) states:

> (I)    The first part of Rule 2(a) extends the scope of any heading which refers to a particular article to cover not only the complete article but also that article incomplete or unfinished, **provided** that, as presented, it has the essential character of the complete or finished article.

> (III)    *In view of the scope of the headings of Sections I to VI, this part of the Rules does not normally apply to goods of these Sections*.

GRI 2(a) (emphasis added).

There is no basis to classify the merchandise pursuant to GRI 2(a).  First, as we established, Axion CA 1330 *can* be classified pursuant to the terms of GRI 1—only in a different heading within Chapter 38 than Lanxess advances.  Thus, resort to the subsequent GRIs is not needed.  Second, classification in Chapter 38 precludes application of GRI 2(a), per the EN to GRI 2(a) which states that, "[i]n view of the scope of the headings of Sections I to VI of the HTSUS, this part of the Rules does not normally apply to goods of these Sections."  Chapter 38 of the HTSUS, covering the parties' respective proposed headings, is included in Section VI, HTSUS.  Therefore, GRI 2(a) does not apply when determining the classification of the subject merchandise under heading 3815 or heading 3824, HTSUS.

21

Furthermore, without addressing the applicable EN, Lanxess improperly relies on several of CBP's administrative rulings for its flawed GRI 2(a) analysis. CBP's administrative rulings are not binding on this Court. *See, e.g.*, *S.C. Johnson & Son, Inc. v. United States*, 415 F. Supp. 3d 1373, 1385 (Ct. Int'l Trade 2019). Moreover, none of the cited rulings supports Lanxess's claimed provision because they do not involve the application of GRI 2(a) to a heading contained with Sections I through VI of the HTSUS (*i.e.*, Chapters 1 through 38). *See* HQ 953265 (May 14, 1993) (reclassifying a product as a mere "doped chemical element for use in electronics," under heading 3818, HTSUS, *after* applying GRI 2(a) to the terms of a subheading of Chapter 85, providing for "light-emitting diodes" or LEDs); HQ 952077 (Feb. 23, 1993) (determining whether to apply headings within Chapters 54 and 59 of the HTSUS); HQ 958492 (Aug. 13, 1996) (modifying HQ 555610 (Feb. 1, 1991)) (classifying miniature "Lite Stik Glowing Ghost Decoration" as a plastic statuette or ornamental article under a subheading of Chapter 39, following prior classification as a toy under a heading of Chapter 95); HQ 083957 (July 11, 1989) (applying GRI 2(a) to determine the "essential character of incomplete components for a laptop computer," classified under a subheading of Chapter 84, for purposes of determining whether additional duties applied under a heading of Chapter 99); NY N300749 (Oct. 18, 2018) (classifying an incomplete elevator in a heading of Chapter 84). Indeed, one of the rulings Lanxess cites—HQ 554581 (July 2, 1987)— involves classification under the TSUS, not the HTSUS, and is thus irrelevant to the application of the GRIs to headings of the HTSUS.

## V.    AXION CA 1330 IS CLASSIFIABLE UNDER HEADING 3824, HTSUS.

Axion CA 1330 is properly classified under heading 3824, HTSUS, which covers:

> Prepared binders for foundry molds or cores; chemical products
> and preparations of the chemical or allied industries (including
> those consisting of mixtures of natural products), not elsewhere
> specified or included.

Axion CA 1330 is a chemical preparation of the chemical or allied industries.[11]  Lanxess is a specialty chemical company that sells Axion CA 1330 to companies that manufacture polypropylene and polyethylene.  *See* Krause Dep. at 74:14-75:18; Krause Decl., ¶ 1 & Ex. 1. Axion CA 1330 is a chemical[12] prepared or made up for use or application in a chemical reaction – specifically, to activate the metallocene in a supported catalyst system, that then acts as the catalyst in the olefin polymerization process.

"Once the court determines the appropriate heading, the court applies GRI 6 to determine the appropriate subheading." *StarKist Co. v. United States*, 29 F.4th 1359, 1361 (Fed. Cir. 2022) (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).  Axion CA 1330 falls squarely within subheading 3824.99.28, HTSUS, which covers:

> Prepared binders for foundry molds or cores; chemical products
> and preparations of the chemical or allied industries (including
> those consisting of mixtures of nature products), not elsewhere
> specified or included: Other: Other: Other: Mixtures containing 5
> percent or more by weight of one or more aromatic or modified
> aromatic substances: Other.

Axion CA 1330 is a mixture[13] of three substances (MAO, TMA, and toluene), and it contains at least 50% by weight of toluene, an aromatic substance.  *See* Ex. A, Krause Dep. Tr. at

---

[11] Industry" is defined as "a distinct group of productive or profit-making enterprises." *Merriam-Webster.com* Dictionary, https://www.merriam-webster.com/dictionary/industry (last accessed May 28, 2025).

[12] "Chemical," used as an adjective, is defined as "of, relating to, used in, or produced by chemistry or the phenomena of chemistry." *Merriam-Webster.com* Dictionary, https://www.merriam-webster.com/dictionary/chemical (last accessed May 28, 2025).  "Chemistry," in turn, is defined as "a science that deals with the composition, structure, and properties of substances and with the transformations that they undergo." *Merriam-Webster.com* Dictionary, https://www.merriam-webster.com/dictionary/chemistry (last accessed May 28, 2025).

[13] A "mixture" is "a substance made from a combination of different substances, or any combination of different things." *Cambridge*

38:25-40:8; Francis A. Carey, "aromatic compound," *Encyclopedia Britannica* (Mar. 18, 2024),

https://www.britannica.com/science/aromatic-compound.

Based on the foregoing, Axion CA 1330 is properly classifiable under subheading

3824.99.28, HTSUS.

---

*Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/mixture (last accessed May 28, 2025).

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court grant the Government's cross motion for summary judgment; deny plaintiff's motion for summary judgment; enter judgment that the imported merchandise covered by this case is classifiable under subheading 3824.99.28, HTSUS; order CBP to reliquidate the entries under this tariff provision; and order plaintiff to pay the United States the increased duties owed as a result of the reliquidation of the entries.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Marcella Powell
MARCELLA POWELL
Of Counsel:                                  Senior Trial Counsel
Emma Tiner                                  Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel        Commercial Litigation Branch
International Trade Litigation                26 Federal Plaza, Room 346
U.S. Customs and Border Protection           New York, New York 10278
                                            Tel. (212) 264-9230
Dated: September 12, 2025                    Attorneys for Defendant