UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LANXESS CORPORATION,  :  <br>           :  <br>    Plaintiff,  :   Court No. 23-00073 <br>           :  <br>    v.      :  <br>           :  <br>UNITED STATES,    :  <br>           :  <br>    Defendant.  :  <br>           : | |

**DEFENDANT'S REPLY MEMORANDU IN FURTHER SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT**

　　　　　　　　　　　　　　　　　　　　BRETT A. SHUMATE
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　PATRICIA M. McCARTHY
　　　　　　　　　　　　　　　　　　　　Director

　　　　　　　　　　　　　　　　　　　　JUSTIN R. MILLER
　　　　　　　　　　　　　　　　　　　　Attorney-in-Charge
　　　　　　　　　　　　　　　　　　　　International Trade Field Office

　　　　　　　　　　　　　　　　　　　　MARCELLA POWELL
Of Counsel:　　　　　　　　　　　　　　Senior Trial Counsel
Emma Tiner　　　　　　　　　　　　　Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel　　Commercial Litigation Branch
International Trade Litigation　　　　　26 Federal Plaza, Room 346
U.S. Customs and Border Protection　　New York, New York 10278
　　　　　　　　　　　　　　　　　　　　Tel. (212) 264-9230
Dated: January 12, 2026　　　　　　　Attorneys for Defendant

**TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE PROPER CLASSIFICATION OF AXION CA 1330 IS REACHED BY APPLICATION OF GRI 1 ................................................................................................. 2

        A.  GRI 2(a) Is Not Applicable to Heading 3815, HTSUS ............................................... 3

        B.  Axion CA 1330 Does Not Possess The "Essential Character" Of A "Reaction Accelerator" Of Heading 3815, HTSUS ......................................................................... 6

        C.  The Government's Interpretation of The Tariff Term "Reaction Accelerator" Is Correct ........................................................................................................................... 9

        D.  Whether Axion CA 1330 Is "Consumed" In the Polymerization Process Is Immaterial To Its Classification Under Heading 3815, HTSUS. .................................................. 10

    II.   AXION CA 1330 IS CLASSIFIABLE UNDER HEADING 3824, HTSUS .................. 11

    III.  IN THIS *DE NOVO* ACTION, THE GOVERNMENT IS NOT PRECLUDED FROM ASSERTING SUBHEADING 3824.99.28, HTSUS, AS THE PROPER CLASSIFICAITON OF AXION CA 1330 .................................................................... 12

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Avecia, Inc. v. United States*, 30 Ct. Int'l Trade 1956, 1986 (2006) .............................. 6

*CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011). .......................... 5

*Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022) ...... 14

*Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) ....................................... 14

*Kent Displays, Inc. v. United States*, 698 F. Supp. 3d 1339, 1349 (Ct. Int'l Trade 2024) ........... 14

*La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) .............................. 5

*Maple Leaf Mktg., Inc. v. United States*, 639 F. Supp. 3d 1363 (Ct. Int'l Trade 2023) ................ 14

*Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998 ....................................... 5

*Nature's Touch Frozen Foods (W.) Inc. v. United States*, 639 F. Supp. 3d 1287, 1296 (Ct. Int'l Trade 2023), *aff'd*, 2025 WL 1354992 (Fed. Cir. May 9, 2025). .............................................. 5

*Pomeroy Collection, Ltd. v. United States,* 32 Ct. Int'l Trade 526 (2008) ..................................... 6

*R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014); ..................................... 5

*Skaraborg Inv. USA, Inc. v. United States*, 22 C.I.T. 413, 417 (1998) ........................................ 16

*Wilton Indus. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013) .......................................... 5

**Statutes**

28 U.S.C. § 1583 ............................................................................................................................ 16

28 U.S.C. § 2640 ............................................................................................................................ 15

28 U.S.C. § 2643 ............................................................................................................................ 17

28 U.S.C. § 2643(b) ....................................................................................................................... 16

Heading 7013, HTSUS ..................................................................................................................... 8

Heading 3406, HTSUS ..................................................................................................................... 7

Heading 3815, HTSUS ..................................................................................................................... 4

Heading 3824, HTSUS ................................................................................................. 3, 13

Heading 9405, HTSUS ....................................................................................................... 7

Subheading 3815.19.00, HTSUS ...................................................................................... 10

Subheading 3824.99.28, HTSUS ........................................................................... 4, 16, 17

Explanatory Notes to Heading 3815, HTSUS ............................................................... 8,10

**<u>Other Authorities</u>**

GRI 1 .............................................................................................................................. 5, 9

GRI 2(a) ..................................................................................................................... 5, 6, 9

NY N128896 (Nov. 10, 2010) .......................................................................................... 16

INDUSTRY, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/industry ........................................... 11

CHEMICAL, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/chemical ........................................ 11

CHEMISTRY, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/chemistry .................................. 11-12

## SUMMARY OF THE ARGUMENT

Lanxess claims that Axion CA 1330 is classifiable in heading 3815 of the Harmonized Tariff Schedule of the United States (HTSUS), as a "reaction accelerator." Looking at the plain meaning of those terms and applying the bedrock principles of tariff classification, the dispositive question is whether Axion CA 1330 accelerates a chemical reaction in its condition as imported. The undisputed facts establish that it does not. It is undisputed that, at importation, Axion CA 1330 is a finished product comprised only of MAO, TMA, and toluene, and it is not deposited on a support. Docket No. 58, Joint Statement of Material Facts Not in Dispute (Joint SOF), ¶¶ 6, 39. It is undisputed that, in its condition as imported, Axion CA 1330 cannot accelerate a chemical reaction and is not catalytically active. *Id.*, ¶¶ 37-38. Those undisputed facts are dispositive as to Lanxess's claimed classification. Accordingly, Axion CA 1330 is not classifiable as a "reaction accelerator" in heading 3815, HTSUS.

In its reply, Lanxess seeks to salvage its classification claim by arguing that Axion CA 1330 is an unfinished "reaction accelerator." That argument fails for the same reason. Inherent in the plain meaning of the phrase "reaction accelerator" is its ability to accelerate a reaction. A product that lacks that capability does not fall within the term "reaction accelerator." Because it is undisputed that Axion CA 1330 is incapable of accelerating a reaction in its condition upon importation, it cannot be classified as an unfinished "reaction accelerator."

By contrast, the undisputed facts further establish that Axion CA 1330 is covered by heading 3824, HTSUS, as a preparation of the chemical industries. Lanxess is a specialty chemical company. Joint SOF, ¶ 49. Axion CA 1330 is a chemical prepared or made up for use or application in a chemical reaction, specifically, to activate the metallocene in a supported catalyst system, with the activated metallocene then acting as the catalyst in the olefin

1

polymerization process. *Id.*, ¶¶ 11-17. The merchandise is properly classifiable under subheading 3824.99.28, HTSUS.

## ARGUMENT

I. **THE PROPER CLASSIFICATION OF AXION CA 1330 IS REACHED BY APPLICATION OF GRI 1**

In our moving brief, we established that the proper classification of Axion CA 1330 is achieved by application of GRI 1. GRI 1 requires the classification of merchandise "according to the terms of the headings and any relative section or chapter notes . . . ." Here, the competing HTSUS headings are 3815 and 3824, [1] HTSUS. Heading 3815, HTSUS, provides for "reaction initiators, reaction accelerators and catalytic preparations not elsewhere specified or included." Heading 3824, HTSUS, provides for "chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included." Headings 3815 and 3824 are mutually exclusive. Lanxess argues that Axion CA 1330 is properly classified as a "reaction accelerator" in heading 3815, HTSUS. Because heading 3824, HTSUS, is a basket provision, the classification analysis must begin with heading 3815, HTSUS. Based on lexicographic sources, we established that the common meaning of the tariff term "reaction accelerator" is a substance that increases the speed of a chemical reaction, *i.e.*, the chemical change of two or more substances into a new substance. *See* Def's Br. at 13-14. The Explanatory Notes to heading 3815, HTSUS, confirm this common

---

[1] In footnote 2 of its reply brief, Lanxess indicates that subheading 3824.99.28, HTSUS, no longer exists and that the Government's reference to that subheading in its brief was in error Pl.'s Reply Br. at 3. Lanxess is incorrect. As we indicated in footnote 1 of our moving brief, all references to the HTSUS and Explanatory Notes are to the versions that were in effect in 2020, when the subject merchandise was entered. Thus, the Government's citation to subheading 3824.99.28, HTSUS, is correct.

2

meaning. *See* Explanatory Note to heading 38.15 ("This heading covers preparations which initiate or accelerate certain chemical processes . . ."). We then established that Axion CA 1330 does not satisfy the common meaning of the term "reaction accelerator." The parties agree that, in its condition as imported, Axion CA 1330, cannot accelerate a reaction and is not catalytically active. Axion CA 1330 is one component of a three-part catalyst system, which is prepared by Lanxess's customers <u>after</u> importation. Because Axion CA 1330 does not initiate or accelerate a chemical process in its condition as imported, it cannot be classified in heading 3815, HTSUS. The correct classification for Axion CA 1330 is heading 3824, HTSUS.

In an effort to avoid the plain language of heading 3815, HTSUS, Lanxess advances a myriad of arguments based on erroneous interpretations of statutory terms and a misapplication of the GRIs and the Explanatory Notes.

### A. GRI 2(a) Is Not Applicable to Heading 3815, HTSUS.

Lanxess argues that, by application of GRI 1 and GRI 2(a), Axion CA 1330 is classifiable in heading 3815, HTSUS, as an unfinished "reaction accelerator." Pl.'s Reply at 10. Specifically, Lanxess argues that the "GRIs are in a headnote to the entire HTSUS." *Id*. According to Lanxess, "GRI 2(a) applies to all tariff provisions." *Id*. at 11. "By application [sic] GRI 2(a), the terms of heading 3815, HTSUS, include unfinished articles that have the 'essential character' of a good that accelerates reactions or is a catalytic preparation." Pl.'s Reply at 11. Lanxess's classification argument is erroneous and unpersuasive.

As an initial matter, the GRIs are not contained in a "headnote" as they are separate, overarching principles that govern the interpretation of the HTSUS. The GRIs are to be applied in numerical order. A product is classifiable under GRI 1 if it "is described in whole by a single classification heading" of the HTSUS. *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353,

3

1358 (Fed. Cir. 2013) (quoting *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)).  If no heading describes the product in whole, the Court may proceed to GRIs 2 through 5, in order, only proceeding to the next GRI if the previous GRI cannot be used to classify the product.  *See Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998); *Wilton Indus. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013).  "[I]f the proper heading can be determined under GRI 1, the court is not to look to the subsequent GRIs."  *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014); *Nature's Touch Frozen Foods (W.) Inc. v. United States*, 639 F. Supp. 3d 1287, 1296 (Ct. Int'l Trade 2023), *aff'd*, No. 2023-2093, 2025 WL 1354992 (Fed. Cir. May 9, 2025).

Moreover, GRI 2(a) does not – and cannot – apply to "all tariff provisions" (Pl. Reply at 11) in the HTSUS.  GRI 2(a) provides:

> 2. (a) Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also be taken to include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.

The Explanatory Note to GRI 2(a) states:

> (I)   The first part of Rule 2(a) extends the scope of any heading which refers to a particular article to cover not only the complete article but also that article incomplete or unfinished, <u>provided</u> that, as presented, it has the essential character of the complete or finished article.
>
> ...
>
> (III*)*   <u>In view of the scope of the headings of Sections I to VI, this part of the Rules does not normally apply to goods of these Sections.</u>

GRI 2(a) (emphasis added).

4

GRI 2(a) extends the scope of a heading to encompass incomplete, unfinished, unassembled, and disassembled goods. However, GRI 2(a) only applies where the plain language of the headings can accommodate incomplete, unfinished, unassembled, and disassembled goods. The Explanatory Note to GRI 2(a) states that it does not normally apply to the headings of Sections I through VI, of the HTSUS (that is, Chapters 1 through 38). As this Court acknowledged, certain provisions of the HTSUS "are simply not susceptible to being 'unfinished' products because in their unfinished condition they are fundamentally different goods." *See Avecia, Inc. v. United States*, 30 Ct. Int'l Trade 1956, 1986 (2006). That is precisely the case with heading 3815, HTSUS. GRI 2(a) is inapplicable to heading 3815, HTSUS, which identifies goods by function and does not contemplate "unfinished" goods. Specifically, a "reaction accelerator" cannot exist in an unfinished state. Unless a product actually accelerates a reaction, it simply does not satisfy that tariff term.

Lanxess's reliance on *Pomeroy Collection, Ltd. v. United States,* 32 Ct. Int'l Trade 526 (2008), to illustrate the application of GRI 1 and GRI 2(a) in reaching a classification is misplaced. Pl. Reply Br. at 12-13. In *Pomeroy*, the issue before the Court was the proper tariff classification of four models of glass vessels with candles or sand that were imported in a disassembled or unassembled condition. The vessels were shipped in a manner where the purchaser received all of the disassembled components in one shipment. 32 C.I.T. at 528. The plaintiff argued that its four imported glass vessels at issue were properly classifiable in heading 7013, HTSUS, which provides for "[g]lassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes," heading 9405, HTSUS, which covers "[l]amps and lighting fittings," or heading 3406, HTSUS, which provides for "[c]andles, tapers and the like."

5

This Court held that when assembled, the four products clearly fell within the scope of heading 9405, HTSUS, as a lamp.

*Pomeroy* is distinguishable legally and factually. *Pomeroy* involved two competing HTSUS headings—7013 and 9405—that contemplate articles being imported unassembled or disassembled, and the Court did not apply GRI 2(a) to its interpretation of any tariff provisions in Section I through VI.[2] Moreover, unlike the "[l]amps and lighting fittings" of heading 9405, HTSUS, as we established previously, the tariff term "reaction accelerator" in heading 3815, HTSUS, does not contemplate articles being imported in an unfinished condition. Moreover, unlike the glass vessels in *Pomeroy*, Axion CA 1330 was not imported in an unassembled, disassembled, incomplete, or unfinished condition. The imported Axion CA 1330 is a finished specialty chemical product, manufactured pursuant to a customer-specific contract and imported in its final, formulated form. Joint SOF, ¶¶ 6, 30. Accordingly, *Pomeroy* has no bearing on a classification analysis under heading 3815, HTSUS.

### B. Axion CA 1330 Does Not Possess The "Essential Character" Of A "Reaction Accelerator" Of Heading 3815, HTSUS

Notwithstanding the fact that in its condition as imported, Axion CA 1330 is incapable of accelerating a chemical reaction, Lanxess nonetheless argues that Axion CA 1330 "has the essential character of a reaction accelerator." Pl. Reply Br. at 13. According to Lanxess, "one indicator of essential character is if something is the principal active part of the finished article." Pl. Reply Br. at 14. Lanxess argues that Axion CA 1330 is "the main ingredient of the reaction accelerator or supported catalyst system." *Id*. In fact, the catalyst system for which Lanxess's

---

[2] Although the plaintiff in *Pomeroy* raised heading 3406 (which falls within Section I through VI of the HTSUS) as a third alternative potential classification, the Court did not analyze the potential applicability of this heading and confined its discussion of GRI 2(a) to headings 7013 and 9405. *See* 32 CIT at 536-543 & 553, & nn. 13 & 14.

customers purchase Axion CA 1330 has two active ingredients, namely, Axion CA 1330 and metallocene on a support (typically, silica gel).  *Id*.  Lanxess contends that Axion CA 1330 "plays a continuing role in the supported catalyst system" after activating the metallocene such as "enabling the metallocene to act as the catalytic center for the olefin polymerization."  *Id*.  Also, the fact that the only use for Axion CA 1330 is as the main component of a specific supported catalyst system used to make polyolefins, "further confirms that it provides the essential character of this catalyst system."  *Id*. at 15.  Lanxess's argument is unavailing.

      We have established that Axion CA 1330 fails to satisfy the common meaning of the tariff term "reaction accelerator" of heading 3815, HTSUS (GRI 1), and that the tariff term does not accommodate goods being incomplete or unfinished (GRI 2(a)).  For the sake of completeness, however, we will address Lanxess's GRI 2(a) "essential character" argument.  Even if GRI 2(a) applied to heading 3815, HTSUS (which it does not), it only serves to expand the scope of the heading to include disassembled, unassembled, incomplete, and unfinished goods.  In this circumstance, GRI 2(a) would only extend the scope of the term "reaction accelerator."  The analysis would then require a determination of the essential character of a "reaction accelerator" and an assessment as to whether Axion CA 1330 possesses that character.  That is not the "essential character" analysis that Lanxess advances, however.  Lanxess makes no effort to show that, in its condition as imported, Axion CA 1330 possesses the essential character of a "reaction accelerator."  Rather, Lanxess's GRI 2(a) "essential character" analysis improperly analyzes Axion CA 1330 by reference to its post-importation role in a completed "supported catalyst" system.  The term "supported catalyst" only appears in subheading 3815.19.00,

7

HTSUS[3], and it is well-established that "headings must be chosen without any reference to subheadings." *Nature's Touch Frozen Foods Inc. v. United States*, 639 F. Supp. 3d 1287, 1300 (Ct. Int'l Trade 2023).

Furthermore, the defining characteristic of a "reaction accelerator" is the ability to accelerate a chemical reaction. It follows that, at a minimum, an unfinished "reaction accelerator" must still be capable of accelerating a chemical reaction. *See* Explanatory Note to 38.15, HTSUS (2017). It is undisputed, however, that in its condition as imported, Axion CA 1330 is incapable of accelerating a chemical reaction. Regardless of the theory advanced by Lanxess, Axion CA 1330 is not classifiable in heading 3815, HTSUS, as a "reaction accelerator."

To the extent that Lanxess argues that Axion CA 1330 can be classified as a "catalytic preparation" or an unfinished "catalytic preparation" of heading 3815, HTSUS, that argument suffers from the same defect as its "reaction accelerator" theory. Axion CA 1330—as the only product under consideration for classification—is not a catalytic preparation in its condition as imported, a fact that Plaintiff implicitly acknowledges in its opening brief. *See* Docket No. 39, Pl.'s Mot. Summary J., at 12 ("Although as imported, CA 1330 does not yet have the support, this is because it is the U.S. polyolefin producer who uses CA 1330 to make the catalytic preparation or catalyst system." (emphasis added)); *id.* at 16 ("CA 1330 is used exclusively as part of a catalytic preparation[.]" (emphasis added)). Under any term of heading 3815, HTSUS, the article must itself satisfy the statutory language—here, either by being capable of initiating or accelerating a chemical reaction. It is not sufficient for an article to merely serve as a component

---

[3] Subheading 3815.19.00, HTSUS, covers "[r]eaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included: supported catalysts: Other."

8

in a system or mixture that is prepared <u>after</u> importation.  Axion CA 1330, on its own, is not described by the terms of heading 3815, HTSUS.  *See also* Def.'s Br at 19-20.

  **C.** **The Government's Interpretation Of The Tariff Term "Reaction Accelerator" Is Correct.**

  Lanxess argues that our interpretation of the tariff term "reaction accelerator" is overly narrow.  Pl.'s Br. at 15.  Lanxess contends that we limited the scope of that term to only goods that "act as the catalytic center for the polymerization process."  *Id*. at 15.  That characterization is incorrect.  We defined a "reaction accelerator" as a substance that accelerates a chemical reaction.  Nowhere in our brief did we argue that Axion CA 1330 must act as a "catalytic center for the polymerization process" in order to be considered a "supported catalyst."

  Our position is simple.  In its condition as imported, Axion CA 1330 is incapable of accelerating a chemical reaction.  As such, it cannot be classified under heading 3815 as a reaction accelerator.  Even if the Court were to conclude that heading 3815 applied, Axion CA 1330 cannot be classified as a "supported catalyst" under subheading 3815.19.00 because it is undisputed that, in its condition as imported, it is not a catalyst and it is not on a support.  Accordingly, Lanxess's classification claim under heading 3815, HTSUS, must fail.

  Finally, Lanxess purports to rely on the Explanatory Notes as guidance regarding the scope of heading 3815, HTSUS, but yet disregards that guidance.  The Notes state that the heading covers "preparations which initiate or accelerate certain chemical processes."  *See* Explanatory Note to 38.15, HTSUS.  The guidance is significant in that it makes clear that products classified in heading 3815, HTUS, must, in their condition as imported, initiate or accelerate a chemical process.  Products that are incapable of performing either function are not classifiable in heading 3815, HTSUS.  Here, it is undisputed that, in its condition as imported, Axion CA 1330 neither initiates nor accelerates a chemical process.  Rather, Axion CA 1330 is

9

merely one of three components of a supported catalyst system that is assembled <u>after</u> importation by Lanxess's customers.

### D. Whether Axion CA 1330 Is "Consumed" In The Polymerization Process Is Immaterial To Its Classification Under Heading 3815, HTSUS.

Lanxess opens its brief with an argument that has no bearing on the classification of Axion CA 1330. Specifically, Lanxess argues that the Government erroneously contends "that the MAO in [Axion] CA 1330 is 'consumed' in the polymerization process." Pl.'s Br. at 8. Lanxess then claims that the Government relies on this mistaken factual conclusion to determine that Axion CA 1330 "is therefore precluded from classification as a catalyst." Lanxess's argument misses the mark. The term "catalyst" does not appear in heading 3815, HTSUS, and whether a product is consumed during the polymerization process is not a requirement for classification in heading 3815, HTSUS. Consumption and polymerization occur <u>after</u> importation and after the customer adds the metallocene on the support. Thus, the only dispositive question is whether in its condition as imported, Axion CA 1330 can accelerate a chemical reaction. It cannot.

Furthermore, Axion CA 1330 is consumed during the post-importation polymerization process. Axion CA 1330 is ultimately consumed as an activator of the metallocene that acts as a catalytic center for polymerization. The facts establishing consumption in the reaction are not in dispute. *See* Joint SOF § 36 (discussing the activation process and Axion CA 1330's donation of a methyl group). Lanxess's USCIT Rule 30(b)(6) designated agent, Michael Krause, testified that Axion CA 1330 is consumed in the polymerization process:

> [Q]   [W]hat does the term catalyst mean?
>
> A.    A catalyst is typically defined as a -- as something that accelerates a chemical reaction without actually being

> consumed within the reaction itself.
>
> Q. So for purposes of this sentence where it says Axion CA1330 is an organometallic used as a catalyst, that means that Axion CA1330 according to Lanxess accelerates a reaction but it's not used, it's not consumed?
>
> A. That's a little bit more complicated. It is not consumed in the sense that it is incorporated deliberately in the final product, but <u>it is -- ultimately, it is consumed in the sense that the final product is several hundred thousand times more prevalent than the catalyst</u>. The catalyst is left in the final product because it is present as a residue. It's not removed from the final product in other words. That that -- it's -- so to say it's consumed or not, it's -- <u>I guess that depends on your definition of consumed</u>.

*See* Confidential Ex. A, Krause Dep. at 16:20-17:20 (emphasis added).

## II. AXION CA 1330 IS CLASSIFIABLE UNDER HEADING 3824, HTSUS.

Heading 3824, HTSUS, covers:

> Prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included.

In our moving brief we established that Axion CA 1330 is a chemical preparation of the chemical or allied industries.[4] Lanxess is a specialty chemical company that sells Axion CA 1330 to companies that manufacture polypropylene and polyethylene. *See* Ex. A, Krause Dep. at 74:14-75:18; Krause Decl., ¶ 1 & Ex. 1. Axion CA 1330 is a chemical[5] prepared or made up for

---

[4] Industry" is defined as "a distinct group of productive or profit-making enterprises." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/industry (last accessed May 28, 2025).

[5] "Chemical," used as an adjective, is defined as "of, relating to, used in, or produced by chemistry or the phenomena of chemistry." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/chemical (last accessed May 28, 2025). "Chemistry," in turn, is defined as "a science that deals with the composition, structure, and properties of substances and with the transformations that they

11

use or application in a chemical reaction – specifically, to activate the metallocene in a supported catalyst system, that then acts as the catalyst in the olefin polymerization process. Lanxess does not dispute any of those points. In fact, Lanxess abandoned discussing heading 3824, HTSUS, in its reply brief. *See* Pl.'s Reply Br. at 8 ("The Government's GRI 1 argument that heading 3824, HTSUS, covers [Axion] CA 1330 can therefore be dismissed out of hand and will not be discussed further in this brief"). Because Axion CA 1330 is not classifiable in heading 3815, HTSUS, and falls squarely within the terms of heading 3824, HTSUS, classification under that heading is proper.

### III.   IN THIS *DE NOVO* ACTION, THE GOVERNMENT IS NOT PRECLUDED FROM ASSERTING SUBHEADING 3824.99.28, HTSUS, AS THE PROPER CLASSIFICATION OF AXION CA 1330

In our moving brief, we advised the Court that as the evidentiary record developed in this litigation, the undisputed facts prompted the United States to reevaluate the classification of the imported merchandise at liquidation under subheading 3208.90.00, HTSUS, as a paint or varnish. Def.'s Br. at 9-10. We also advised that the Government notified Lanxess of our view of this classification of the imported merchandise (*i.e.*, subheading 3824.99.28), and that we were no longer pursuing classification under heading 3208, HTSUS. *See* Ex. B, Resp. No. 17, Def.'s Response to Pl.'s Interrog. *Id*. Finally, we informed the Court the United States asserts subheading 3824.99.28, HTSUS, as a defense in this case, and that should the Court prefer that the United States amend its answer and assert a counterclaim for this classification, we stand at the ready to do so. *Id*. *See e.g., Second Nature Designs, Ltd. v. United States*, 654 F. Supp. 3d 1301 (Ct. Int'l Trade 2023); *Maple Leaf Mktg., Inc. v. United States*, 639 F. Supp. 3d 1363 (Ct.

---

undergo." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/chemistry (last accessed May 28, 2025).

Int'l Trade 2023); *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334 (Ct. Int'l Trade 2022); *Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022).

Lanxess cannot claim any prejudice. Instead, Lanxess argues that the Government is precluded from advancing a new classification position in this litigation for two reasons. First, Lanxess argues that the Government is not allowed to raise a new classification as a defense without amending its pleadings. Second, Lanxess argues that the Government cannot argue for an alternative classification because Axion CA 1330 "is subject to a binding CBP ruling." Both of Lanxess' arguments are without merit.

In determining the correct classification of an imported good, this Court has an obligation "to reach a correct result." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). That determination is "upon the basis of the record made before the court." 28 U.S.C. § 2640. When determining the proper tariff classification of imported merchandise, the Court must "find the correct result," either independently or by comparison of competing HTSUS headings proposed by the parties. *Jarvis Clark Co.*, 733 F.2d at 878. *See also Kent Displays, Inc. v. United States*, 698 F. Supp. 3d 1339, 1349 (Ct. Int'l Trade 2024) ("Given the Court's obligation to reach the correct result, other chapters of the HTSUS must also be considered, regardless of whether they were submitted by the parties). Here, under *Jarvis Clark*, the Court has an obligation to consider all possible classifications for Axion CA 1330 regardless of whether a particular classification was raised by a party in a pleading.

Moreover, the Court has held that asserting a counterclaim is not necessary to advance a different classification and that the Government may raise it as a defense. *See generally Second Nature Designs, Ltd. v. United States*, 654 F. Supp. 3d 1301, 1306-07 (Ct. Int'l Trade 2023);

13

*Maple Leaf Mktg., Inc. v. United States*, 639 F. Supp. 3d 1363, 1366-67 (Ct. Int'l Trade 2023); *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334 (Ct. Int'l Trade 2022); *Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 1333-34 (Ct. Int'l Trade 2022). And "the court's ability to order the payment of increased duties from [an importer] does not depend on whether there is a counterclaim." *Second Nature Designs*, 654 F. Supp. 3d at 1307 n.6. (citing 28 U.S.C. § 2643(b) (authorizing the court to order procedures as it "considers necessary to enable it to reach the correct decision"); *id*. § 2643(c)(1) (authorizing the court to "order any other form of relief that is appropriate in a civil action"); and *Cyber Power*, 586 F. Supp. 3d at 1333 n.15 (distinguishing *Cormorant* because "that court analyzed whether the [CIT] had jurisdiction over the United States' counterclaim pursuant to 28 U.S.C. § 1583," not whether the counterclaim stated a claim)). Thus, subheading 3824.99.28, HTSUS, must be considered by the Court and that subheading can serve as a basis for increased duties upon reclassification of Axion CA 1330. *Kent Displays, Inc.*, 698 F. Supp. 3d at 1353.

      Furthermore, Lanxess's "binding ruling" argument also fails. According to Lanxess, CBP issued classification ruling NY N128896 (Nov. 10, 2010) on a product consisting of methylaluminoxane and toluene to Chemtura Corporation (Chemtura), the predecessor of Lanxess. That ruling served as the basis for CBP's denial of Lanxess's underlying protest challenging the classification of Axion CA 1330. *See* Docket No. 7, Rule 73.1 filing. Lanxess next argues that Axion CA 1330 is "the same product as the subject of the ruling" and consequently the ruling "limits the actions CBP may take in response to a reclassification" of Axion CA 1330 "to a higher rate." Pl.'s Br. at 21. Lanxess argues that any change in position from NY N128896 triggers the "notice and comment" procedures of 19 U.S.C. § 1625(c), and that CBP may only modify or revoke a ruling that has been in existence for over 60 days by

following a public notice and comment process. Pl.'s Reply Br. at 21. The procedures of Section 1625(c), however, are not at play. Furthermore, this Court is not bound by CBP's administrative rulings. 28 U.S.C. § 2640; *Lutron Elec. Co., Inc. v. United States*, Court No. 22-00264, Order on Motion to Compel, Docket No. 37 (" . . .Customs ruling letters do not bind the court here. It is "the court's duty to find the *correct* result, by whatever procedure is best suited to the case at hand." (quoting *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original)); *Skaraborg Inv. USA, Inc. v. United States*, 22 C.I.T. 413, 417 (1998) ("Customs rulings are not binding on the Court."). Rather, the Court decides the classification question *de novo* and can order all appropriate relief. 28 U.S.C. § 2643.

Relying on 19 C.F.R. § 152.16, Lanxess next argues that CBP's regulations preclude this Court from ordering reliquidation at a higher duty rate for entries that have already been liquidated. Pl. Reply Br. at 23. Lanxess argues that the regulations make clear that "even if the Court classified [Axion] CA 1330 under heading 3824, HTSUS, it may not order reliquidation at the higher duty rate for entries that have already been liquidated." *Id*. A plain reading of the regulation shows that it prescribes CBP's action and does not limit the Court's authority to provide remedial relief. Moreover, the Court is not bound by CBP's internal regulations and retains its full authority to order reclassification of the imported Axion CA 1330 in heading 3824, HTSUS, and the reliquidation of the entries at a higher duty rate.

Based on the foregoing, Axion CA 1330 is properly classifiable under subheading 3824.99.28, HTSUS.

## **CONCLUSION**

For these reasons and those set forth in our moving brief, we respectfully request that the Court grant the Government's cross motion for summary judgment; deny plaintiff's motion for summary judgment; enter judgment that the imported merchandise covered by this case is classifiable under subheading 3824.99.28, HTSUS; order CBP to reliquidate the entries under this tariff provision; and order plaintiff to pay the United States the increased duties owed as a result of the reliquidation of the entries.

                Respectfully submitted,

                BRETT A. SHUMATE
                Assistant Attorney General

                PATRICIA M. McCARTHY
                Director

                JUSTIN R. MILLER
                Attorney-In-Charge
                International Trade Field Office

By:   /s/ Marcella Powell
       MARCELLA POWELL

Of Counsel:                        Senior Trial Counsel
Emma Tiner                        Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel    Commercial Litigation Branch
International Trade Litigation          26 Federal Plaza, Room 346
U.S. Customs and Border Protection     New York, New York 10278
                                        Tel. (212) 264-9230
Dated: January 12, 2026                Attorneys for Defendant